## Massinger, Appellant, *v.* Reading R. R. Co.

Argued January 13, 1930. Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Truman D. Wade,* with him *Joseph G. McKeone,* for appellant, cited: Smith v. R. R., 158 Pa. 82; Coolbroth v. R. R., 209 Pa. 433; Seifred v. R. R., 206 Pa. 399; Buckman v. R. R., 232 Pa. 351.

*Thomas L. Hoskins,* for appellee.—Evidence that plaintiff did not stop, look and listen may be so overwhelming as to justify the court on the whole evidence in entering binding instructions in favor of defendant, even though plaintiff testifies that he stopped, looked and listened: Frank v. Reading Co., 297 Pa. 233;

Davies v. P. R. T. Co., 228 Pa. 176; Hodder v. P. R. T. Co., 217 Pa. 110; Holden v. P. R. R. Co., 169 Pa. 1.

OPINION BY MR. JUSTICE FRAZER, March 17, 1930:

Plaintiff sued to recover for personal injuries and damage to his automobile resulting from a collision with one of defendant's trains at a highway grade crossing near Phœnixville. The jury found for plaintiff, the court below, however, subsequently entered judgment for defendant non obstante veredicto and plaintiff appealed. The sole question raised is whether or not the court below was right in its conclusion that plaintiff was guilty of contributory negligence as matter of law.

Plaintiff testified that early in the afternoon on a clear day he was driving his automobile northwardly from Phœnixville on the Schuylkill Road. This highway crosses defendant's railroad tracks a short distance from Phœnixville at a place where both highway and railroad are in a cut, leaving embankments on both sides of the crossing which is at an acute angle. Plaintiff stopped his car when the right front wheel was four or five feet from the first rail, which was the nearest point where he could safely stop without being struck by a passing train. He testified that from this point he could see in the direction from which the train approached to a small cattle shed located a short distance down the track, variously estimated to be from 125 to 200 feet, but which actual measurement showed to be 225 feet. Plaintiff also testified that, after he stopped, he first looked to the left and, seeing no train approaching, looked to the right and rear to see if cars were in sight in the other direction. Not seeing a train in either direction he started his car and drove forward in low gear and was in the middle of the tracks before he saw the approaching train. His testimony shows that from the time he first looked to the left until he was on the railroad track he failed to again look in that direction. He stated: "When I was just in the center of the track,

I looked to the left, and the train was almost on top of me." He testified further: "Q. How far would you say the train was away from you, doctor, when you were crossing? A. When I was in the center of the track when I first saw the train? Q. Yes, sir. A. I wouldn't say over fifteen or twenty feet at that time. It was practically on top of me, and I attempted to get across and was struck." On being further questioned, he fixed the distance of the engine from him when he first saw it as "practically on top of me—10, 15, perhaps 20 feet —I don't know," repeating he was "in the center of the track when [he] saw this train bearing down on [him]." At another part of his testimony, on cross-examination, he gave the following account of the accident: "I looked to my left up the track towards Kimberton as far as I could see whether the track was clear view. I saw nothing; I looks to my right, although I was compelled to look out the back of my car to look to the right,—the glass in the back of the coupé, to look to my right—[so] that I could see down the track, saw nothing coming, applied the low gear to my car, and attempted to go across the track, and just as I got the front wheels, I would say, were on the north side of the track, looked to the left and saw the train practically on top of me."

We quote the above testimony because in our opinion it clearly convicts plaintiff of contributory negligence. It is undisputed that the railroad track itself was a straight line for a distance of 2,400 feet, and consequently as soon as plaintiff started to move forward and had passed over a few feet he would have an unobstructed view of the tracks for that distance. The testimony for defendant is that plaintiff could see the entire distance from the place where he says he stopped, but for the purpose of the case we must ignore defendant's evidence. Plaintiff did not perform his full duty by looking both ways after having stopped and before again starting his car. The law required him to continue to look as he advanced (Krenn v. Ry., 259 Pa. 443, 446;

Nolder v. P. R. R., 278 Pa. 495, 498) ; and especially under the circumstances present here, where, under his own version of the situation, his view of the track would be immediately increased as he moved forward. His admission that he did not look again and did not see the approaching train until it was practically on top of him, as he testified, shows conclusively that he did not perform his duty, and indicates that he neglected to look or that he failed to see what must have been obvious, or, seeing it, took the chances. In any view of the situation the accident was the result, in part at least, of his own carelessness.

The judgment is affirmed.