**KINGHORN v. PENNSYLVANIA R. CO.**
(two cases).

Nos. 211, 212.

Circuit Court of Appeals, Second Circuit.
Feb. 16, 1931.

590

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (M. L. Fearey and G. F. Tinker, both of New York City, of counsel), for appellant.

Arthur Butler Graham, of New York City (H. Walter Reynolds and Frederick M. Schlater, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Since the jury found for the plaintiff in both cases, we should resolve conflicts in the evidence in the light most favorable to him and accept as established all the essential facts which the plaintiff's evidence, if not contradicted, would fairly prove to be true. In doing so, we must come quickly to the conclusion that the engine did not signal with bell or whistle until just before the collision and when no signal by it could have been of the slightest aid to the plaintiff. Consequently, the defendant was palpably negligent, and that such negligence was the proximate cause of the collision cannot be doubted. Error is alleged in the charge of the court which permitted the jury to say whether the defendant was negligent in failing to maintain a signal at the crossing to warn travelers of approaching trains, but traffic at this place was heavy enough and the view a traveler had was sufficiently obstructed to justify submitting the question. Grand Trunk R. Co. of Canada v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485; Panama R. R. v. Pigott, 254 U. S. 552, 41 S. Ct. 199, 65 L. Ed. 400; New York, S. & W. R. Co. v. Moore (C. C. A.) 105 F. 725.

We think the outcome of this appeal must depend upon whether or not the plaintiff was guilty of contributory negligence. In discussing this phase of the case, we fully realize the ease with which error creeps into computations of space and time based in part upon mere estimates of time and space made under conditions unfavorable for accuracy, but what the plaintiff must have seen and must have done, even if the testimony most in his favor is true, should not be overlooked. If we assume that he stopped his car and looked just as he said he did, and assume that he did not see the engine approaching, it is certain that the engine then was at least a little more than 850 feet away. If we give the plaintiff the benefit of every possibility and assume that at the instant after he turned his attention to driving his car onto the northerly rail of the siding (and this leaves out whatever time he took to start his own engine) the engine came in sight, he went exactly 24.9 feet, the distance from the northerly rail of the siding to the northerly rail of the east-bound main track plus part of the width of that track plus somewhat more than half the length of his car. The last distances do not appear, but the approximate length of a passenger automobile and the approximate width of a railroad track are not wholly unknown. If we exclude these added distances and take his testimony that the engine was 200 feet away when he went on the east-bound track, he traveled 24.9 feet while the engine went 850 less 200, or 650 feet. This means that the engine was running about twenty-six times as fast as the plaintiff was traveling. The plaintiff testified that he was going 8 or 9 miles an hour. Probably he did not know exactly, but it is fair to assume that his speed in second gear was at least his lowest estimate of 8 miles an hour. It is reasonable to believe that he went as fast as that, and the best evidence the record affords is his own testimony that he did. With the foregoing facts established, a simple computation shows that, if they are true, the engine must have been running at a speed of not less than 208 miles per hour to hit his car when it did. We do not know what speed this engine was capable of making. We know it was a passenger engine, but, in the absence of evidence other than that in this record, it would strain credulity beyond reason to believe that it was making any such terrific

speed or that, if it were, it could have suddenly applied its emergency brakes, hit the plaintiff's automobile as it did and remain on the tracks. We do not mean to be understood that such a thing would be impossible. We simply do not know, and, until credible evidence indicates that it could, common sense indicates the contrary. This means that, if the engine was not running that fast, it was where he could have seen it before starting across. Further analysis of the evidence, however, does not demonstrate that it was surely in sight when he says he did look. If it could be shown that it was, even with the background of foliage against which he was looking, he cannot excuse himself for not seeing a moving engine to the sight of which, if there, he was devoting his entire time and attention. F. W. Woolworth Co. v. Davis (C. C. A.) 41 F.(2d) 342, 347.

 The plaintiff testified that he looked as he went across and, while he was bound to be alert for his own safety and to look as well as he could for approaching trains, he was then charged as a matter of law with seeing only what the jury from the evidence determined a prudent man in like circumstances would have seen. Kauffman v. Penn. R. R. Co., 237 Pa. 227, 85 A. 138; Pennsylvania R. R. Co. v. Garvey, 108 Pa. 369. When his attention was given over to looking and listening before he started across he is charged as a matter of law with seeing and hearing, his sense of sight and hearing not being shown to have been impaired, whatever was there to be seen and heard. Hickey v. Missouri P. R. R. (C. C. A.) 8 F.(2d) 128; Radziemenski v. B. & O. R. R. Co., 283 Pa. 182, 128 A. 735.

As he would have seen the engine had he looked when he drove onto the siding, provided its speed was less than 208 miles an hour, we may safely take it for granted that his testimony as to looking after he started his engine did not include looking between the time just before he started his engine and the time he started his car across. He testified that this was four or five seconds; that he was in motion nine or ten seconds before the collision, and, if these estimates are taken, it is possible that the engine, even if running at approximately the speed of 35 to 40 miles an hour at which the defendant's evidence placed it, would not have been in sight when the plaintiff looked for it when his car was at rest and yet have collided with him on the east-bound track as it did.

The accuracy of these estimates of time is so plainly necessary to any conclusion that the plaintiff looked as he testified that he did

and saw no engine because the engine was not in sight when he looked and yet was hit by an engine running from 35 to 40 miles an hour, that they must be checked against whatever does appear with more accuracy to see if on any reasonable basis they can be taken for the truth. Again we must take the known distance his car traveled after he started to cross. It was 24.9 feet from the point where he began to cross to the nearest rail of the east-bound track. If he is allowed 12 feet more to the point of collision, and this would assume that the length of his car plus the width of the track was 24 feet, almost certainly an over-estimate, he traveled 36.9 feet in nine seconds, his lowest estimate of time. This means that his speed was only 2.8 miles per hour. If he took ten seconds for this distance, his speed was less. If we have added too much distance for the length of his car and the width of the track, his speed was likewise less. Obviously, he was far from right either when he testified that he was in motion nine or ten seconds before the collision or when he said his speed as he crossed the tracks was 8 or 9 miles an hour. It is not difficult to determine that his estimate of time was wrong. We know he was in second speed. It is reasonable to believe, as before stated, that he would have traveled in that gear across railroad tracks on which it cannot be thought that he would remain longer than reasonably necessary at a speed at least as fast as he put it. It is wholly incredible that he would have gone as slowly as 2.8 miles per hour without leaving his car in low gear and without some reason for going so slowly. If we conclude, as we must, that, as between the plaintiff's irreconcilable testimony as to time and speed the jury could not reasonably have believed his estimate of time even approached accuracy, we must take it for granted, since favorable verdicts indicate that the jury did believe him, that his estimate of speed was accepted. This accords also with what it is reasonable to believe, as he would be more likely to know the approximate speed of his car than the elapsed time in seconds. Taking then his lowest speed of 8 miles an hour and a distance of 36.9 feet traveled before collision, we find that he took slightly over three seconds to do it instead of nine or ten. Giving him the longest estimate of time taken after he looked along the track to start his own engine and get his car in motion, we find that it was a little more than eight seconds between the time he looked from a place of safety and did not see the engine and the time it hit him. On his evidence of 850 feet which

the engine must have traveled during that time, we find that it must have been making a little more than 72 miles per hour. This speed may reasonably have been accepted by the jury, and, on this basis, it was well within reason to have believed that the plaintiff looked when he said he did, saw no engine because none was in sight, and that the collision occurred when and where we know it did. But, while the plaintiff was starting his engine, the defendant's engine, would have come up and been in plain sight had the plaintiff looked when he started his car across. If the engine was running as fast as the plaintiff's evidence would show, it would have been much nearer and more plainly in view at that time than if going only as fast as the defendant admits. So it seems that the presence of any contributory negligence of the plaintiff is dependent upon whether he was bound as a matter of law to look for the engine just as he started to cross the tracks; since we know that if he had done so he would have seen it and been warned in ample time to have avoided the collision, regardless of any negligence of the defendant.

■■ Although the time was short between his last look and his driving onto the siding, we are dealing with about twice as much time as it took him to go from there to the point of collision, and with the difference between looking when, under the particular circumstances of this case, it would have been effective and what was useless to prevent being hit by an engine running about 72 miles per hour. Such a speed was well within what would have used, to the end that he would be maintained by the defendant's trains. He was required to use such care in choosing the place and time to look and listen as a careful and prudent man in like circumstances would have used, to the end that he would be able to see and hear when he could avoid being hit by an engine running at least that fast. The rule laid down in Baltimore & O. R. R. Co. v. Goodman, Adm'rx, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, can have no practical meaning unless one going knowingly across railroad tracks must look and listen when and where what he can then see will give him information on which he can intelligently decide whether it is safe to cross. The law requires that much absolutely. Massinger v. Reading R. R. Co., 300 Pa. 6, 149 A. 652; Provost v. Director General, 265 Pa. 589, 109 A. 595; Nolder v. Penn. R. R.; 278 Pa. 495, 123 A. 507; Tull v. B. & O. R. R. Co., 292 Pa. 458, 141 A. 263. What the plaintiff was bound to do as a mat-

ter of law is well stated in Harrington v. Rutland Railroad Co., 89 Vt. 112, 118, 119, 94 A. 431, 433: "Duty required him to continue to look and listen as he approached the track until the last moment when the discovery of the train would have availed for his protection. He was chargeable with such knowledge of the approach of the train as he might have obtained by such vigilant use of his senses as a careful and prudent man would make in the circumstances. If, by the vigilant use of his sight and hearing, he might have discovered and avoided the danger, and he omitted such vigilance, he was guilty of contributory negligence." On the subject of when and where a traveler over a railroad crossing must look and listen Judge Sanborn said, in Chicago, M. & St. P. Ry. Co. v. Bennett (C. C. A.) 181 F. 799, 804: "It is no more the exercise of ordinary care to look and listen when and where looking and listening are useless than it is to fail to look and listen where looking and listening would be effective." See, also, Kutchma v. Atchison, T. & S. F. Ry. Co. (C. C. A.) 23 F.(2d) 183. The fact that this engine was not on a regular train or running on any regular schedule made no difference with the duty of the plaintiff to look effectively. Schofield v. Chicago, Milwaukee & St. P. Ry. Co., 114 U. S. 615, 5 S. Ct. 1125, 29 L. Ed. 224; Chicago, Rock Island & Pacific R. R. Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542.

Thus it becomes a question of whether as a matter of law a plaintiff, who has stopped, looked, and listened right at a railroad crossing where he can see and hear a moving engine, and has neither seen nor heard one, is to be charged with having seen one that came into view four seconds or less after he looked and before he started to cross. One who looks and sees nothing four seconds before he goes across would ordinarily be safe in crossing, we would think, and be in danger so rarely that to require more purely as a matter of law would place upon a traveler the burden of being not only careful, but infallible. Under such circumstances each particular case presents a question for the jury. What was said in Ayers v. Railway Co., 201 Pa. 124, 50 A. 958, 959, covers the Pennsylvania rule in this regard: "We have adopted the rule that, a traveler at a crossing having once stopped in a place of safety before going upon the road, and there looking and listening, and, neither seeing nor hearing danger, has then undertaken to cross, yet, nevertheless, the fact that he has once exercised care does not relieve him from the duty

of exercising care while in the act of crossing. But what exactly he should then do to absolve himself from negligence must depend on the circumstances of the particular case." This was followed in the Third Circuit in a crossing case in Pennsylvania. Baltimore & Ohio R. R. Co. v. Wood (C. C. A.) 228 F. 625. See, also, Mills v. Penn. R. R., 284 Pa. 605, 131 A. 494; Delaware & Hudson Co. v. Boyden (C. C. A.) 269 F. 881; Lehigh Valley R. R. Co. v. Kilmer (C. C. A. 2) 231 F. 628; Grand Trunk Ry. Co. of Canada v. Ives, supra; Texas & P. R. R. Co. v. Gentry, 163 U. S. 353, 16 S. Ct. 1104, 41 L. Ed. 186; Chesapeake & Ohio Ry. Co. v. Waid (C. C. A.) 25 F.(2d) 366.

█ We think the principle is sound and applies to this case. That where an automobile driver has stopped, looked, and listened right at a railroad crossing where his view is clear and, though he has seen all that was in sight, has seen no engine approaching, heard no signal because none was given, and, as it chanced that his own engine stopped while he was looking, is delayed four or five seconds in starting to cross, it is for the jury to say whether he did what a careful and prudent man in like circumstances would have done in starting across the tracks without just at that instant looking again. The question of contributory negligence under such circumstances cannot be determined wholly as a matter of law.

█ As these cases were tried once before and the plaintiff's testimony at the two trials as to when he looked and what he could see and how long it took him to cross differed somewhat, it is urged that he is bound in this trial by his previous testimony. In the sense that a party cannot play fast and loose with the facts, this is true. Smith v. Boston Elevated Ry. Co. (C. C. A.) 184 F. 387, 37 L. R. A. (N. S.) 429; Fisher v. Central Vermont Ry. Co., 118 App. Div. 446, 103 N. Y. S. 513. But where he may, as here, honestly have been mistaken at one time or the other, the fact that he is a party does not preclude him from correcting his previous testimony. It is for the jury to consider his testimony at both times; determine which time, if either, he was correct; treat previous conflicting admissions as evidence in chief as well as impeachment; consider how far, if at all, he is impeached; and find the actual facts in the light of all the evidence. La Flam v. Missisquoi Pulp Co., 74 Vt. 125, 52 A. 526. As we have seen, the plaintiff's estimates of time, space, and speed as given on this trial cannot all be correct, but absolute accuracy as to

each of those things could hardly be expected from memory alone, and, of course, his credibility and the weight to be given his testimony were matters for the jury.

Both judgments affirmed.