**JONES**

v.

**NEW YORK, C. & ST. L. R. CO.**

Civ. No. 26691.

United States District Court,
N. D. Ohio, E. D.

Nov. 6, 1952.

---

4.   Ripley v. Findlay Galleries, Inc., 7 Cir., 155 F.2d 955, certiorari denied 329 U.S. 775, 67 S.Ct. 194, 91 L.Ed. 666.

**352**

Harrison, Spangenberg & Hull, Cleveland, Ohio (Craig Spangenberg, Cleveland, Ohio, of counsel), for plaintiff.

Edwin Knachel, Cleveland, Ohio, for defendant.

McNAMEE, District Judge.

The sole issue in this case is whether plaintiff's failure to look in the direction from which the train was approaching as he advanced from his stopping place 20 feet from the nearest rail, was a contributing proximate cause of his injuries.

The case was submitted to a jury and a verdict returned in favor of the plaintiff in the sum of $20,000. The verdict of the jury establishes that defendant did not give timely signals of the approach of the train to the crossing. The accident happened in Pennsylvania, and the issues are governed by the law of that state.

The evidence most favorable to plaintiff discloses that he was operating a truck, loaded with manure, in a general northerly direction on a highway that intersected defendant's single track railroad at an extremely acute angle. Because of the presence of bushes, weeds, and other vegetation to the right of the highway it was impossible for one approaching from the south to obtain a view of the tracks to the east until he reached a point about thirty feet south of the railroad. Plaintiff brought his truck to a stop 20 feet from the nearest rail. At this point, by looking backwards and to the right, he had a view to the east to a curve which was 300 feet away. As he stopped, plaintiff looked in both directions but neither saw nor heard the approaching train. Nor did his helper, seated at his right, who also looked and listened. Plaintiff then started his truck and, proceeding at a speed of 2½ to 3 miles per hour, moved towards and onto the tracks. His truck had almost cleared the last rail when one of the rear wheels thereof was struck by the train coming from the east and traveling at the rate of 50 miles per hour. As plaintiff moved forward from his stopping place he had a full view of the tracks to the west. The road upon which he was traveling, however, was almost parallel with the railroad, and to obtain a view to the east he was required to look at an angle to his rear. His view through the rear windows of his truck also was obstructed by the load upon the vehicle. Because of these conditions plaintiff could not make any observations to the east while his truck was in motion.

Defendant argues that under the law of Pennsylvania plaintiff was required to look and listen as he proceeded ahead from the place where he had stopped, and that his failure to do so cannot be excused either because of the acute angle of the intersection or because his view was obstructed by the load on his truck. Defendant cites the case of Price v. New York Cent. System, D.C., 91 F.Supp. 898, 902, as authority for the proposition that a motorist is not excused from looking backward before he enters a railroad crossing if such looking is necessary to obtain a view of the tracks. The Price case holds:

"If the angle of the crossing is such as to require the traveler to turn to his side and rear 130 degrees to make his looking effective, we believe it is his duty to turn and look at the necessary angle."

But it appears that in the Price case the train was within the range of the motorist's vision before he entered the zone of danger and that if he had looked while in a place of safety, he would have seen the train in time to have avoided the collision.

Defendant also cites a line of cases which hold that a motorist is not excused from his duty to look because of obstructions due to the construction of his vehicle or the load carried thereon. How-

ever, it appears that in each of those cases the approaching train was within the range of the motorist's vision *before* he entered upon the crossing. In Colorado & Southern R. Co. v. Barth, 117 Colo. 17, 183 P.2d 549, 550, the court said:

"As plaintiff approached the crossing, the train, by a comparison of its speed with his, was only a short distance away and in plain sight."

And again:

"There is but one conclusion deducible, viz., he did not look, because, if he had, he could not have failed to discern the train approaching the crossing he was about to drive over."

In Morris v. Chicago, M., St. P. R. Co., 1 Wash.2d 587, 97 P.2d 119, 124, 100 P.2d 19, the court made the following observation:

"There was no reason why deceased could not have seen the train after making the turn, even with his load, had he looked."

The court also noted:

"It also appears that there was no obstruction of any kind shutting off the view down the tracks to the east, other than * * * the hay on the driver's truck".

That a similar situation obtained in Rintala v. Duluth, W. & P. R. Co., 159 Minn. 499, 199 N.W. 562, 564, is apparent from the statement of the court that—

"It is beyond successful contradiction that, allowing the three cars in the spur all possible effect as an obstruction to vision, plaintiff could have seen the approaching train, had he been looking for it, as he got onto the spur."

In Higbee v. Atlantic City R. Co., 244 Pa. 233, 90 A. 635, the court stated:

That plaintiff "placed himself where his senses of sight and hearing were of little or no practical avail and drove slowly in front of the train that he could have seen and heard if he had been in a position where he could have looked and listened for it."

The foregoing cited cases turned upon the principle that the incontrovertible facts demonstrated that the approaching train was in plain sight of the motorist before he entered upon the tracks. The same principle was applied in Provost v. Director General of Railroads, 265 Pa. 589, 109 A. 595, and in Massinger v. Reading R. Co., 300 Pa. 6, 149 A. 652, where it appears from the first syllabus of the case that the plaintiff as he proceeded to cross without further looking "was immediately struck by a train."

The situation here is quite different. As plaintiff stopped his truck 20 feet from the nearest rail, he had a view to the east 300 feet to the curve. He says he did not see the approaching train as he looked in that direction. The correctness of his testimony in this regard is confirmed by the fact that his truck had almost cleared the track at the time of the collision. From the place where it was stopped with its front end 20 feet from the nearest rail, the truck, traveling at 2½ to 3 miles an hour, moved a distance of twice the length of the truck plus the width of the rails, or about 45 feet, before the impact occurred. At the rate of speed at which the truck was moving, this distance would be covered in about ten or eleven seconds. The train, going about fifty miles an hour, or 73 feet per second, was between 730 and 803 feet east of the crossing and 430 to 503 feet beyond the curve at the time the truck started forward from its stopping place. At 50 miles per hour the train would have traveled the 300 feet from the curve to the crossing in four seconds. It is therefore apparent that the train was not within the range of plaintiff's vision as he started his truck forward from the stopping place, and it is equally clear that if he had been able to and did look to the east as he proceeded ahead, he would not have seen the train until his truck was upon the cross-

ing. Whether at that time he would have been able to accelerate the speed of his truck so as to avoid the accident is a matter upon which reasonable minds might differ and provides no sound basis for holding as a matter of law that his failure to again look to the east was a proximate cause of the accident.

Upon its facts, and particularly in relation to the mathematical calculations there made, the case of Mills v. Pennsylvania R. Co., 284 Pa. 605, 131 A. 494, 495, is closely analogous. In that case the truck driver stopped his vehicle six feet from the first rail. At that point he had a view 700 feet down the tracks. The rear end of his truck was struck as it almost cleared the last rail. The calculations relative to speed and distance that were made demonstrated that the truck driver started across the tracks while the train was in sight. But the Supreme Court of Pennsylvania, in rejecting the argument that plaintiff was contributorily negligent as a matter of law, said:

"Although the mathematical calculation suggested by appellant's counsel apparently demonstrates that the truck driver had time to cross to the opposite side, unless he started after the train came in sight, such precise timing of the relative movements of the truck and train and close calculation of time and space, at best only an approximation, make the margin of safety such a narrow one that a traveler should not be held accountable, as matter of law, for the resulting accident."

On the basis of the demonstrable physical facts there is less reason in this case than there was in the Mills case for nonsuiting the plaintiff on the ground of contributory negligence. The courts of Pennsylvania have declared that a person operating a motor vehicle towards a railroad crossing and who has stopped, looked, and listened, must continue to look and listen as he moves forward and until he safely crosses the tracks. Kolich v. Monongahela R. Co., 303 Pa. 463, 154 A. 705. But it also has been stated upon high authority that while a traveler approaching the tracks of a railroad is bound by positive rule of law to stop, look, and listen, his subsequent conduct in moving onto and across the tracks is determined by the circumstances of the particular case. Baltimore & O. R. Co. v. Wood, 3 Cir., 228 F. 625; Delaware & H. R. Corp. v. Cottrell, 3 Cir., 69 F.2d 195. The full statement of the court on this subject in Baltimore & O. R. Co. v. Wood [228 F. 629], is as follows:

"The full measure of duty thus imposed by the law of Pennsylvania upon a traveler in crossing at grade the tracks of a railroad, has reference to his conduct both in approaching tracks and in crossing them. With respect to the former, it lays down a positive and unbending rule that he must stop, look and listen. With respect to the latter, while the law requires him to look and to observe the precautions which the danger of the situation requires, it nevertheless lays upon him no positive rule as to the precise conduct which, in varied situations, he must pursue. The conduct of the traveler in approaching the tracks of a railroad is determined by positive rule of law. He must stop, look and listen. His subsequent conduct in going on and passing over the tracks is determined by 'the circumstances of the particular case.'"

The evidence here discloses that plaintiff could not make further observations to the east and safely operate his vehicle unless he again brought his truck to a stop. Manifestly, he could not stop his truck while it was on the tracks. To have done so would have been suicidal. Nor because of danger equally great could he bring his truck to a stop so close to the tracks as to place it in line with the overhang of the train. The only way plaintiff could have made further observations to the east would have been by stopping his vehicle a second time a few feet forward of the place where the orig-

inal stop was made. But whether, in the exercise of ordinary care, plaintiff ought to have made a second stop five or six feet from the first rail and again looked to the east, is a question that this court cannot decide as a matter of law. From a point five feet south of the tracks plaintiff had no better or longer view to the east than he had at a point 20 feet away. Nor can it be inferred conclusively that if plaintiff had made a second stop five feet from the tracks and looked to the east, he would then have seen the train. To move his truck forward fifteen feet would have taken a little over three seconds. In that period of time the train, which was 430 to 503 feet beyond the curve, would have traveled slightly more than 220 feet. Whether plaintiff would have seen the train if he had made this second stop five feet from the tracks and again looked to the east, would depend upon whether he made his observation in less than the three or four seconds necessary for the train to come within the range of his vision at the curve. Plaintiff says that he stopped his truck 20 feet from the tracks because he deemed it unsafe to stop at a point nearer the first rail. On several previous occasions under similar circumstances he had stopped and made his observations at that point and, hearing no whistle or bell and seeing no train, he safely proceeded across the tracks.

Of course, his conduct on those previous occasions did not establish the standard of care to be exercised at the time of the accident. But, considering that his truck was stopped in close proximity to the track as he looked and listened—that he heard no signals warning of the approach of the train—and that the train was not then within the range of his vision—I am of the opinion that it was for the triers of the facts to say whether his failure again to look to the east as he moved forward towards the track was a contributing proximate cause of his injuries.

The motion for judgment is overruled.