## BALTIMORE & OHIO RAILROAD COMPANY *v.* GOODMAN, ADMINISTRATRIX.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 58.   Argued October 20, 1927.—Decided October 31, 1927.

1. One who drives upon a railroad track relying upon not having heard a train or any signal and taking no further precaution, does so at his own risk.   If he can not otherwise be sure whether a train is dangerously near, the driver must stop and get out of his vehicle before attempting to cross.   P. 69.
2. In an action for negligence the question of due care is not left to the jury when resolved by a clear standard of conduct which should be laid down by the courts.   P. 70.

10 F. (2d) 58, reversed.

CERTIORARI, 271 U. S. 658, to a judgment of the Circuit Court of Appeals sustaining a recovery for death caused by alleged negligence of the Railroad, in an action by the widow and administratrix of the deceased.   The action was removed from an Ohio state court on the ground of diversity of citizenship.

*Mr. A. McL. Marshall,* with whom *Messrs. Byron B. Harlan, Morison R. Waite,* and *William A. Eggers* were on the brief, for petitioner.

A traveler on a highway passing over a railroad crossing at grade is guilty of contributory negligence barring a recovery if he fails to stop, if the view is obscured. *Chicago &c. Ry.* v. *Bennett,* 181 Fed. 799; *Bradley* v. *Mo. Pac. Ry.,* 228 Fed. 484; *Nor. Pac. Ry.* v. *Tripp,* 220 Fed. 286; *Neininger* v. *Cowan,* 101 Fed. 787; *Dernberger* v. *B. & O. R. R.,* 234 Fed. 405; *New York &c. R. R.* v. *Maidment,* 168 Fed. 21; *Brommer* v. *Penna. R. R.,* 179 Fed. 577; *Payne* v. *Shotwell,* 273 Fed. 806; *Payne* v. *Del. &c. R. R.,* 8 F. (2d) 138.

A traveler on the highway over a railroad crossing at grade who fails to look and see what could have been seen had he looked, is guilty of contributory negligence barring a recovery. *B. & O. R. R.* v. *Fidelity Co.,* 2 F. (2d) 310; *Wabash Ry.* v. *Huelsmann,* 290 Fed. 165; *Atchison &c. Ry.* v. *McNulty,* 285 Fed. 97; 262 U. S. 746; *Trenholm* v. *Sou. Pac. Co.,* 4 F. (2d) 562; *Parramore* v. *Denver &c. Ry.,* 5 F. (2) 912; 269 U. S. 560; *Hickey* v. *Mo. Pac. R. R.,* 8 F. (2d) 128; *Bergman* v. *Nor. Pac. Ry.,* 14 F. (2d) 580; *B. & M. R. R.* v. *Daniel,* 290 Fed. 916; *D. T. & I. R. R.* v. *Rohrs,* 114 Oh. St. 493; *Toledo Term. R. R.* v. *Hughes,* 115 Oh. St. 380.

See also, *Jensen* v. *Chicago &c. Ry.,* 12 F. (2d) 413; *Atlantic City R. R.* v. *Smith,* 12 F. (2d) 658; *Atchison &c. Ry.* v. *Spencer,* 20 F. (2d) 714; *Cleve. &c. R. R.* v. *Lee,* 111 Oh. St. 391; *Penna. R. R.* v. *Morel,* 40 Oh. St. 338.

*Mr. Robert N. Brumbaugh,* with whom *Mr. I. L. Jacobson* was on the brief, for respondent.

The Circuit Court of Appeals found that the decedent could not see north of the tool shed until the front of his truck was less than twenty feet from the west rail. The

evidence was uncontradicted that the seat in which the decedent, as the driver of the truck, was sitting was six feet back from the front of the machine, and that the overhang of the railroad-engine was two and one-half feet. Therefore, the front of his truck was within eleven and one-half feet from the danger point, before he could first see past the tool shed, behind which was the approaching train. Traveling at five to six miles per hour, he was covering seven to eight feet per second. Therefore, he had only one and one-half seconds interval to guide his conduct. Hearing no signal, no bell, or other warning, he had been led into a trap. The Railway Company seeks to hold him guilty of contributory negligence, as a matter of law, upon what he could or could not do in one and one-half seconds. To merely state the proposition is to answer it. *Flannelly* v. *Del. & Hud. Co.,* 225 U. S. 597; *Beckman* v. *Hines,* 279 Fed. 241; *Wise* v. *Del. &c. R. R.,* 81 N. J. L. 397; *L. E. Ry.* v. *Summers,* 125 Fed. 719; 192 U. S. 607; *Grand Trunk Ry.* v. *Ives,* 144 U. S. 408.

The true meaning of the rule contended for by the petitioner is well expressed by the trial judge thus: " In effect, the contention of the defendant goes to the extent of urging that in no case of a daylight automobile crossing accident, in which a view of the track can be had even though but a short distance from the rails, can there be a recovery." We cannot believe that such is the law in any Circuit of the United States. *D. L. & W. Ry.* v. *Rebman,* 285 Fed. 317; *Smith* v. *N. Y. C. Ry.,* 177 N. Y. 224.

The petitioner is asking this court to fix a standard in law by which a court is enabled to arbitrarily say in every case of a daylight automobile crossing accident in which any view of the track can be had, even though a short distance from the rails, what conduct shall be considered reasonable and prudent on the part of the driver of the automobile under any and all circumstances. There is no such " fixed standard." *Grand Trunk Ry.* v. *Ives,* 144

U. S. 417. See *Continental Imp. Co.* v. *Stead*, 99 U. S. 161. The cases cited by petitioner were decided under their peculiar facts, just as was the case at bar.

Mr. Justice Holmes delivered the opinion of the Court.

This is a suit brought by the widow and administratrix of Nathan Goodman against the petitioner for causing his death by running him down at a grade crossing. The defence is that Goodman's own negligence caused the death. At the trial, the defendant asked the Court to direct a verdict for it, but the request, and others looking to the same direction, were refused, and the plaintiff got a verdict and a judgment which was affirmed by the Circuit Court of Appeals. 10 F. (2d) 58.

Goodman was driving an automobile truck in an easterly direction and was killed by a train running southwesterly across the road at a rate of not less than sixty miles an hour. The line was straight, but it is said by the respondent that Goodman 'had no practical view' beyond a section house two hundred and forty-three feet north of the crossing until he was about twenty feet from the first rail, or, as the respondent argues, twelve feet from danger, and that then the engine was still obscured by the section house. He had been driving at the rate of ten or twelve miles an hour, but had cut down his rate to five or six miles at about forty feet from the crossing. It is thought that there was an emergency in which, so far as appears, Goodman did all that he could.

We do not go into further details as to Goodman's precise situation, beyond mentioning that it was daylight and that he was familiar with the crossing, for it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death. When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that

he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in *Flannelly* v. *Delaware & Hudson Co.*, 225 U. S. 597, 603, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts. See *Southern Pacific Co.* v. *Berkshire*, 254 U. S. 415, 417, 419.

*Judgment reversed.*