FERNANDO FERRARI, Plaintiff and Appellee, *v.* AMERICAN RAILROAD COMPANY, Defendant and Appellant.

No. 4098.   Argued December 6, 1928.—Decided January 23, 1929.

*M. Acosta Velarde* for the appellant.   *García Méndez & García Méndez* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The District Court of Aguadilla rendered judgment against the American Railroad Company and the latter has appealed.   The court found or held substantially as follows: That the accident in question took place at a grade crossing between Aguacate and Montaña; that damages were proved; that the principal matter in discussion was whether the plaintiff had been guilty of contributory negligence or not; that the crossing was obscured by some trees; that the distance between the place where the accident happened and where the automobile of the plaintiff was dragged was sixty

meters; that all the evidence of the plaintiff showed that the defendant company neither blew a whistle nor gave any other signal, such a practice being customary at the spot, and that the train was going at a vertiginous speed with the engine reversed and that the plaintiff observed all due precaution in crossing the road; that there was some opposing testimony as to hearing a whistle which the court did not believe; that the fireman of the train said that he saw the plaintiff when he was fifty or sixty meters away and told the engineer who attempted to apply the brakes; that the engineer did not see Ferrari until he was upon him and admitted that if the train had proceeded with the cow-catcher in front he would have seen the plaintiff before he did; that, after making certain calculations, if the locomotive had been going regularly, with the cow-catcher in front, the train might have been stopped before, and possibly in time to avert the accident; that the train was not a regular one and its arrival was not to be expected unless it gave a signal, so that travelers would be unsuspicious of danger. The court then discusses the matter of contributory negligence and cites the case of *Rosado* v. *Ponce Railroad Co.*, 20 P.R.R. 528, to the effect that contributory negligence could not arise if plaintiff had no reason to suspect the danger; that even if the plaintiff had been negligent, as had not occurred, the last act of negligence was committed by the defendant, citing *Morales* v. *Central Vannina*, 32 P.R.R. 188.

The last-named case has no bearing on the doctrine of the last clear chance suggested by the court. Under the facts of the case, supposing the speed of the train as testified to by the witnesses, there was no clear opportunity to stop in time, even if the engineer had seen the peril of the plaintiff fifty or sixty meters away. The court said perchance the engineer might have stopped in time, but it did not so find. It was not an established fact that the defendant could have stopped the train in time, as discussed in both the majority and dissenting opinions in the case of *Vidal* v. *P. R. Ry., Light &*

*Power Co.,* 32 P.R.R. 707. Also the question would still remain, as shown in the majority opinion, whether the negligence of the plaintiff was not concurrent, as it might be that the plaintiff and the train reached the danger point at approximately the same moment.

We shall assume, with the court but not decide, that the defendant was negligent, but we nevertheless think that the plaintiff can not recover. He was guilty of contributory negligence. The plaintiff was traveling in a Ford on a road that ran more or less parallel with the track and was going in a direction opposite to the train. He testified that he looked and listened, but he made no effort to stop. He admitted that the Ford, running as it was in first, made a great deal of noise. Another one of his witnesses gave testimony tending to show that the train made a great deal of noise. The plaintiff also testified that he was familiar with the road and the track. The foregoing facts are clear. There was a conflict over some of the other conclusions of the court which we find it unnecessary to analyze, although we are not at all convinced that the defendant was not right about some of them. As we have said, we are assuming, but not deciding, that the defendant was guilty of negligence.

The general duty of a traveler is to stop, look and listen. If his vision is somewhat obstructed, as seems to be the case here, the duty to stop is stronger, and we shall not stop to cite the authorities. A number of them may be found on page 30 of the defendant's brief, and we find no countervailing citations in the brief of appellee. At the hearing we suggested the possible application of *Baltimore & Ohio R. R. Co.* v. *Goodman,* 275 U. S. 66. There the court said:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver can not be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he

will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk.''

The appellee attempts to distinguish the case on the facts, more or less insisting that the plaintiff had a right to rely on the train giving a signal, as was customary. Also the appellee stressed some difference in the ability to see the track in the two cases. The theory is that the plaintiff was under no duty to stop because he could or did look around and saw no train. According to counsel he was going somewhat slowly and it was the rear of the automobile that was struck. In our opinion the physical situation of the track at the crossing was such that a person in the automobile at any ordinary rate of speed could have put himself completely out of danger, supposing that there was no reasonable possibility of seeing and hearing the train. In other words, we think the fact was otherwise than maintained and hence if plaintiff had stopped he would have both seen and heard the train. We agree with the appellee that the doctrine of the *Goodman Case* is not new, but we think the Supreme Court was emphasizing the necessity of travelers taking care. In the present case the plaintiff, besides, could not apparently hear the approach of the train perhaps because of the noise of his own car. We are satisfied, however, from the evidence that the plaintiff could have both heard and seen the train if he had stopped.

As the plaintiff can not recover because of his negligence, it becomes unnecessary to examine the other assignments of error.

At the second hearing of this case a great deal of stress was laid on the fact that the plaintiff was proceeding slowly. Given the fact that the driver of an automobile can develop a speed approaching that of the train, we are not so sure that in conditions like the present if a traveler attempts to cross the track he ought not to increase his speed. In this particular case, according to the theory of the plaintiff, the

rear part of the automobile was struck and if the theory was correct, upon reaching the track in due care, he ought. to have been able to get out of the way by going a little more swiftly. If it should seem improbable that a person should on occasion have to increase his speed on crossing a track, it only fortifies our conclusion that the plaintiff, probably proceeding rapidly both in approaching and crossing the track, did not exercise due care. In other words, we can not conceive how, if the plaintiff was going slowly, he did not have a full opportunity to prevent a collision.

The judgment will be reversed and the complaint dismissed.

Chief Justice Del Toro and Justice Hutchison dissented.

### ON MOTION FOR RECONSIDERATION

Opinion of the Court by Mr. Justice Wolf, March 5th, 1929.

The appellee criticises our reproduction of the court's opinion. The reproduction was substantially accurate. The District Court of Aguadilla held not only that the defendant was guilty of negligence but was guilty of gross negligence. Nevertheless we were not mistaken in saying that the court found or held substantially that the principal matter in discussion was whether the plaintiff had or had not been guilty of contributory negligence. For the purpose of our opinion we assumed the negligence of the defendant.

The court below in discussing the facts said that if the train had been going in due form the engineer could have seen Ferrari in time to apply the brakes, perhaps to avert the accident. The idea of the doctrine of the last clear chance is that at the last moment the defendant as a matter of fact might have avoided the accident. Given the supposed negligence of the defendant and the supposed contributory negligence, there should have been a positive finding that despite complainant's negligence defendant could still have avoided the accident. It is true, as previously considered by

us, that in the closing part of its opinion the court, after discussing other matters, did hold or find that the last act of negligence was committed by the defendant.

We can not so find. The court held that it was negligence to run the train with the cow-catcher to the rear. The appellee does not convince us that running trains in this way is crass negligence as the court said. Indeed we are not satisfied that coupling a train with the engine reversed and running it is necessarily negligence. In the operation of trains it may frequently be necessary or even prudently advisable to couple the engine to the train in this way. In any event we can not find in the record any trace of proof of the possibility of any ultimate act on the part of the engineer that would have averted the accident. We shall directly or indirectly revert to this point.

The opinion of the court showed that the judge took a view of the place where the accident occurred and found that there were some trees and plants in the line of vision on approaching the track. Naturally we thought that the court was finding some obstructions to the possibility of seeing an approaching train. The appellee now says that the evidence shows that there was no obstruction to the view of the plaintiff, but only for the engineer. We do not fully understand and it makes no difference.

If the view was totally unobscured there under the facts of this case we are convinced that the plaintiff was either grossly negligent in attempting to cross the track at all or in attempting, as the witnesses testified, to cross slowly. In the way the accident happened, namely, that the rear part of the automobile was struck by the train, if the plaintiff was proceeding slowly he had ample time to see the train and to stop before the train arrived. If, as seems more probable, he crossed rapidly, then his negligence was just as bad, if not greater. In either event the negligence of the plaintiff was continuing up to the very moment of the accident. He did not in this case, according to appellee, have the excuse

of having his vision obscured by the foliage. The plaintiff always had a greater opportunity of avoiding the accident than had the train operatives.

The appellee says we were mistaken in our application of the *Goodman Case,* and cites us to the note in 56 A.L.R. 645. So far as we are not bound by the opinion of the Supreme Court of the United States, we have a great deal of sympathy with the idea that the driver of an automobile ought practically never be obliged to leave his seat in crossing a track. The conditions repeat themselves. By the time the driver could have descended, returned and started his automobile a fresh necessity of looking and listening might readily arise. We did not cite the *Goodman Case* with any idea of imposing such a duty on the driver of a motor vehicle. The principal application of the *Goodman Case* is the affirmance by the Supreme Court of the land of the duty on the part of a driver to stop, look and listen. From the facts of the case we are not satisfied that the plaintiff either duly stopped or duly looked or duly listened. The evidence convinces us that he did not duly perform any one of these acts.

In supposed response to the motion for reconsideration the appellant filed an answer or opposition. We have disapproved of this practice on several occasions and we shall amplify the proposition. *Calaf* v. *Gallardo,* 36 P.R.R. 131; *Ramos Anaya* v. *López,* 36 P.R.R. 451. In practically all adjective matters the principal rule is, "Hear the other side." The court has already taken a position. The other side asks to be heard to present fresh arguments. The issue for the moment practically is between the appellate court and the losing party. If the court maintains its position, as happens in the majority of cases, then the losing party is bound to feel that he was the last one heard. If, on the other hand, we suffer an opposition to be filed and considered, then the losing party may very properly feel that the final action of the court was taken by reason of some of the arguments of his opponent to which he had no opportunity to reply. It

must always be remembered that either party, if he hopes to win, is bound to present all his arguments at the original hearing. If the practice of permitting counter briefs is tolerated, then the mover might claim a right to reply and theoretically he would not be far afield, as the proponent of a motion ought to have such a right. A won judgment might thus be indefinitely delayed. The most rapid way of finally disposing of a case is to permit only the motion itself. *Interest rei publicae ut sit finis litium.* If we are persuaded, or partially persuaded, by the motion for reconsideration, and are willing to hear arguments, the then other side, who had a won judgment, will always in one way or another have an opportunity to be heard. In the instant case we have not read or considered the reply brief of the appellant.

The motion for reconsideration should be overruled.