**WILSON v. LEHIGH VALLEY R. CO.**[*]
**No. 124.**

Circuit Court of Appeals, Second Circuit.
February 3, 1930.

*Certiorari denied 50 S. Ct. 408, 74 L. Ed. —.

60

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (Thomas R. Wheeler, of Buffalo, N. Y., of counsel), for appellant.

White & Rugg, of Buffalo, N. Y. (Ford White, of Buffalo, N. Y., of counsel), for appellee.

Before MANTON, L. HAND, and MACK, Circuit Judges.

MANTON, Circuit Judge.

The appellee's intestate was killed at the Getzville road crossing, northeast of the city of Buffalo. Appellant's two tracks cross this road at grade in a northwest and southeast direction. The deceased, in a Ford sedan which he was driving, with three others, proceeded in a southerly direction and was crossing the tracks when he was struck by a locomotive hauling a train of freight cars, and died as a result of injuries thus sustained.

The highway is substantially level, there being a slight grade on the tracks as they are approached from the highway, which crosses the tracks at an angle of about 40°. As the motorcar approached the tracks, there was an orchard about 1,000 feet away from the tracks, which was the only obstruction to a view of the train approaching in the direction from which it came at the time. The railroad has a right of way of about 100 feet. The track upon which the train was running was the second which the automobile reached as it crossed over. Located about 20 feet from the edge of the pavement was a standard railroad crossing sign, diamond shaped, made of wood, raised on posts 12 to 14 feet high, with the words, "Railroad Crossing: Look out for the Cars." There was a warning sign, in the form of an iron disc painted black with white letters, "Railroad," about 435½ feet north of the railroad and on the west side of the roadway about 6 feet west of the west line of the traveled way. There were painted across the highway one set of white warning marks 120 feet from the crossing, a second set 243 feet, and a third set 355 feet, away. A roadway enters the Getzville highway on the east side of the highway, about 250 feet from the crossing.

On the night of October 30, 1927, the deceased, his wife, and another couple attended a Halloween party at Pendleton, some distance from Buffalo. About 2:30 a. m., they, with some of the guests, returned to Buffalo by automobiles. The deceased's wife testified that he was unfamiliar with the Getzville road and had been directed to use it as a short way home. They were proceeding at about 20 to 30 miles an hour when they reached the crossing. None of the occupants of the car saw the locomotive or its electric headlight, which was turned on and burning at the time, until the automobile was right on the first track, and then the deceased's wife was attracted by the light of the locomotive. The speed of the Ford sedan was not checked in any way, nor were the brakes applied, at any time before the headlight was observed by the deceased's wife. The automobile was equipped with headlights which were in good order, and which threw their rays down on the road ahead.

Some of the party preceded the Wilson automobile in another motorcar about 400 or 500 feet distant, and the tail light of that car was observed by the occupants of the deceased's car. Mrs. Perkins, riding in the Wilson car, testified that the first she knew or saw was "light, a rumble, and a crash." There is no testimony that the deceased slowed the automobile by application of the brakes for the crossing, nor that he looked or listened. There was testimony that no engine bell rang or whistle sounded. Another wit-

ness for the appellee, who followed in the car behind that of the deceased, testified that he saw, about 1,000 feet away from the crossing, the headlight of the train approaching, and could see the train itself coming when it was about 500 feet down the track. The driver of the car which preceded that of the deceased said that, although it was misty, he saw the reflection of the headlights of the Wilson car 400 or 500 feet behind him in the mirror of his car. There was some testimony that there was a light fog or mist, but it is apparent that such did not interfere much with visibility, in view of the facility with which the occupants of the car saw the lights of the other cars as indicated. One of the occupants of the car following the Wilson car stated that he saw the light of that car 600 or 700 feet ahead.

The locomotive had an electric headlight which was lighted and burning brightly at the time of the accident. It consisted of a 250-watt electric bulb in the center and had a reflector behind the light. The apperture was about 16 inches and would throw a beam of light 1,400 feet. It was so bright that an engineer would be able to distinguish an object the size of a man on the track a distance of 800 feet. The light is focused on the railroad straight ahead, but the rays diverge, and for a distance of 800 or 900 feet, the rays would cover approximately 100 feet—the railroad right of way. Assuming, as the jury found, that no warning was given by the locomotive, either by bell or whistle or the rumble of the long freight train, still there was ample opportunity for the deceased and his party to have observed that they were crossing a railroad track, although this unfortunate accident took place in the dark early morning. While the burden is on the appellant to establish contributory negligence as a defense, there is ample evidence in this record to have required the learned District Court to have directed a verdict against the appellee, for she failed to establish, as a matter of law, the deceased's freedom from contributory negligence.

■■ Failure on the part of those in charge of the locomotive to ring a bell or sound a whistle as a warning for the street crossing did not relieve the deceased, operating his car, from taking ordinary precautions for his safety. He was bound to use his senses in listening and looking, and using reasonable care to observe the warning signs along the way, pointing out that he was about to cross railroad tracks. B. & O. R. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645; Railroad Co. v. Hous-

ton, 95 U. S. 697, 24 L. Ed. 542; Wabash Ry. Co. v. Zayac (C. C. A.) 30 F.(2d) 764; Snyder v. Chicago, etc., Ry. Co. (C. C. A.) 29 F.(2d) 910; Hickey v. Missouri Pac. R. R. Corp. (C. C. A.) 8 F.(2d) 128. The rule of due care for the traveler on the highway, approaching a railroad crossing, either on foot or in an automobile, requires him to stop, look, and listen, if he has knowledge that he is about to cross railroad tracks. B. & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645. The deceased had fair warning, if he exercised ordinary care, that he was about to cross a track. There were three different white warning marks across the pavement, at reasonable distances apart, which were notice to him; there was the disc sign, located 435 feet away on the side of the highway as he was approaching; the familiar "Stop, Look and Listen" sign nearer the crossing. If he looked at all, the headlight of the locomotive, concededly lighted and burning brightly, gave notice of the approach of the train. He had ample time to stop his car, had he looked.

■ In view of these several warnings, it is no answer to say that the deceased was unfamiliar with the road or was traveling it for the first time, and to inferentially conclude that he did not know he was crossing a railroad track. Care and prudent conduct in operating a motorcar require one, in driving along an unfamiliar highway at night, to observe the roadway, not only directly in front of him, but to the sides. Care in observing the roadway in front, as he was proceeding, would have made known the signs across the road, and to have looked in front, along the rays of the light from his car, would have brought to his sight the disc sign, as well as the "Stop, Look and Listen" post. The headlight of the locomotive, with its long-distance rays, as we have pointed out, must have thrown the light across the highway crossing when the locomotive was 800 or more feet away. The train was not traveling faster than the motorcar. These warnings were not heeded. Not to have seen these warning and danger signs can only be explained by inattention and want of ordinary care in approaching the crossing. B. & O. R. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645; N. Y. Tel. Co. v. Beckers (C. C. A.) 30 F.(2d) 578; Walker v. East St. Louis, etc., Ry. Co. (C. C. A.) 25 F.(2d) 579.

The rule of watchful care on the part of one approaching a railroad track is somewhat relaxed in favor of a passenger, in a motor-

car, who is not driving, as illustrated in the cases appellee refers us to (Lewis v. L. I. R. R. Co., 162 N. Y. 52, 56 N. E. 548; Wanner v. Phila. & Reading R. R. Co., 261 Pa. 273, 104 A. 570; Azinger v. Penn. R. R. Co., 262 Pa. 242, 105 A. 87; Davidson v. Seaboard Air Line Ry. Co., 170 N. C. 281, 87 S. E. 35); and to one unfamiliar with the road leading to a railroad crossing, where insufficient or no warning signs tell of the presence of tracks across the highway, the rule requiring the traveler to "stop, look, and listen" is not always an absolute one in such cases (Davidson v. Seaboard Air Line Ry. Co., supra; Eline v. Western Md. Ry. Co., 262 Pa. 33, 104 A. 857; and McClure v. So. Pac. R. R. Co., 41 Cal. App. 652, 183 P. 248).

But, under the circumstances here disclosed, it was error to deny the motion to direct a verdict for the appellant.

Judgment reversed.