## LEIBY v. PENNSYLVANIA R. CO.
### No. 348.

Circuit Court of Appeals, Second Circuit.
May 23, 1932.

MANTON, Circuit Judge, dissenting.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Morton L. Fearey and G. F. Tinker, both of New York City, of counsel), for appellant.

Edward J. McCrossin, of New York City, for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought by Myrtle E. Leiby, as administratrix ad prosequendum of her husband, Raymond A. Leiby, deceased, under the statutes of New Jersey to recover damages for his death, sustained through the negligence of the Pennsylvania Railroad Company. The decedent was driving an automobile which was struck at Titusville, N. J., by one of defendant's passenger trains, bound from Philadelphia to Stroudsburg, and running at a speed of fifty or sixty miles an hour. The car was struck at a railroad crossing. Upon conflicting testimony, the court left it to the jury to determine whether

or not the crossing was a part of a public highway and, in our opinion, plaintiff's evidence was sufficient to justify the finding that it was.

■ There was evidence that the engineer, while approaching the crossing, neglected to blow a whistle or ring a bell, as required by the New Jersey statute. This failure to give the statutory warning was proof of negligence on the part of the railroad. Kavanagh v. New York, O. & W. R. Co., 196 App. Div. 384, 187 N. Y. S. 859, affirmed 233 N. Y. 597, 135 N. E. 933. The court submitted to the jury the question whether the failure of the defendant to comply with the statutory signals proximately contributed to the death of the plaintiff's husband, and, in view of the verdict, we must assume that such was the case. The only question for our consideration is whether the evidence showed contributory negligence on the part of the decedent which would bar plaintiff's recovery. We think it did.

■ The accident happened on November 12, 1928, shortly after 5 o'clock in the afternoon. The decedent was alone in his car and drove westerly along the crossing right into the train, which was approaching from the south at right angles to the crossroad. There can be no question that such conduct under ordinary circumstances would be negligent. In clear weather, a person coming along the crossroad toward the railroad track would, for a distance of eighty or ninety feet, have an unobstructed view of the track in a southerly direction extending more than a quarter of a mile. There could be no excuse for failing to see a train coming from the south in time to avoid a collision, unless mist or fog so interfered with visibility as to prevent observation. The plaintiff argues that credible evidence justified the jury in finding that at the time of the collision there was so dense a fog that the decedent could not see the approaching engine in time to avoid it and that he was accordingly not guilty of contributory negligence in driving on the railroad track when he had not been warned of the train by the prescribed statutory signals. The correctness of this conclusion depends mainly on the testimony of the plaintiff's witness Catherine Swift. In approaching the railroad the decedent was bound to stop and look before crossing. If visibility was poor, he was required to be all the more alert and cautious before going on the track.

■ Plaintiff called Catherine Swift to show not only that visibility was poor, but that the decedent stopped and looked as much as he should have done under the circumstances. She testified that on the evening of the accident she came with her three children, aged 9, 7½ and 6 years, respectively, into the crossroad on the west side of the track, crossed the track and reached a bridge which formed a part of the crossroad and passed over a canal that ran parallel to the railroad and easterly of its right of way. This bridge was twelve feet wide and sixty-four feet long, and its westerly end was nineteen feet eastwardly from the track. When she reached the westerly end of the bridge, moving east, she saw the lights of an automobile about ninety feet away as it turned into the crossroad moving west and toward the bridge. It stopped twenty feet from the westerly end of the bridge. She and her children moved up to it and discovered the decedent sitting in the car, which had both windows open, and looking toward the south. She said that she also looked toward the south and heard and saw nothing approaching from that direction up the track. She then went on with her children, still looking south, until she reached the easterly end of the bridge, which was about forty feet from decedent's automobile. At that point she looked back and saw the tail-light of the car moving westwardly along the bridge in the direction of the railroad tracks. She then proceeded easterly from the bridge about thirty-eight feet, rounded the corner of Cooper's store, and got five feet past the entrance, covering a distance of about forty-three feet altogether, when she heard a crash. Shortly after this she looked over toward the railroad (a distance of one hundred and eight feet, which she herself estimated at about one hundred feet), and saw sparks along the track caused by the grinding of the emergency brakes, as the train was being slowed down.

The decedent's body was found in the canal just to the north of the bridge, and his car was found between the track and the canal, not over twenty-one feet to the north of the bridge.

According to Mrs. Swift's testimony, there was a fog, and along the canal, where she said it was thickest, an unlighted object could not be seen more than fifty or sixty feet, yet as she stood at the westerly end of the bridge she had seen the headlights of decedent's car as it turned into the crossroad ninety feet away and she had seen the sparks from the grinding of the brakes at a distance of one hundred and eight feet. Plaintiff's witnesses William and Marvin Jones, who also said that the night was misty

and that there was a fog along the canal, each estimated that they saw the headlights of automobiles two hundred feet away. Indeed, the former saw the automobile of decedent at a distance established by actual measurement to have been two hundred and sixty-eight feet (folio 780), and the latter is the only witness who attempted to limit the visibility of the lights of an automobile at less than three hundred feet (folio 742). But such a powerful headlight as that of the locomotive of defendant's train unquestionably could have been seen several times farther (folio 1395). Mrs. Swift's testimony that she did not see the headlight of the locomotive while she was proceeding along the bridge to the easterly end may be explained by the fact that she was above the water where she had said the fog was thicker and the visibility considerably less than over by the railroad tracks. Moreover, she had no reason to look with any care for a train that was then a long distance off, and she was incumbered at the time by her three small children and an umbrella which she was carrying on account of the rain (folio 200). Such testimony was purely negative, and under the circumstances should be disregarded in view of affirmative testimony that the headlight was burning brightly and could be seen a long distance. Except when at the very east end of the bridge it was so long a time before the collision that the train was very far away. She certainly was not in a position where she was likely to see the light, nor had she any reason to give an oncoming train any real attention. Lehigh Valley R. Co. v. Mangan, 278 F. 85, at page 88. It is unnecessary to attribute bad faith to her statement that she did not see the headlight as she went along the bridge, for she was not then on a line with the railroad tracks, was continually getting farther from them, was carrying an umbrella, attending to her three children, had no reason to look for the engine, and the engine itself was at that time far away.

While Mrs. Swift was going from the easterly end of the bridge to the south end of Cooper's store and five feet beyond, she did not claim that she was looking out for the train. If she and her children walked this distance in ten seconds, the train, if running at the rate of sixty miles an hour, would during that time traverse eight hundred and eighty feet, or, if running, as the engineer testified, at fifty miles an hour, would traverse seven hundred and thirty-three feet. She doubtless took longer than ten seconds to go forty-three feet, because that would be at the approximate rate of three miles an hour for this woman and her children, and such a rate would be faster than their probable speed. Her testimony (at folio 239) that she walked from the end of the bridge until she heard the crash "very slowly," and (at folio 284) that she "hurried across there" in "two or three seconds," can in itself form no basis for any estimate. Ten seconds seems less than a reasonable estimate. It is impossible to suppose that the headlight of the on-coming engine would not have been visible to the decedent if he had looked again after starting his car and just before crossing the track. He had the same length of time to go thirty-nine feet, or less, as Mrs. Swift had to go forty-three feet. He was approaching a railroad track that he knew all about, and it is unreasonable to say that he could not have stopped his car and have avoided the collision if he had acted with diligence. Moreover, in view of the uncontradicted testimony that such a headlight as that of the engine would have a visibility many times greater than that of the lights of the automobile and that they were seen by Jones at a distance of two hundred and sixty-eight feet, it seems quite certain that the decedent could have seen the powerful headlight more than one thousand feet away had he diligently looked (folios 1385 and 1395) when past the bridge and close by the railroad track.

In Kinghorn v. Pennsylvania R. Co., 47 F.(2d) 588, we held that the question whether the plaintiff looked sufficiently was for the jury. But there he had three tracks to cross. He came up within four feet of the first one, which was a siding, looked, and then suffered a little delay, estimated at four seconds, in starting his engine, which was stalled. As soon as it was started, he went right on without looking again and was hit by a locomotive when crossing the last of the three tracks. It was 3 o'clock in the afternoon, and there was no fog. The only question was whether Kinghorn was guilty of negligence as a matter of law in not looking again during the short period of four seconds before starting to cross, and it was held that he was not.

In the present case, the decedent looked when at a point thirty-nine feet from the tracks. We do not know that he continued to look afterwards. Mrs. Swift saw him looking only before she started to go from where he was to the east end of the bridge—a distance of forty-four feet. She estimated that it took her about forty seconds to go these

forty-four feet. If that was a correct estimate of time, more than forty seconds, and very likely as much as fifty seconds, elapsed between the last time the decedent was seen looking and the time he reached the track. There was but a single track to cross, and there was nothing to confuse or occupy him like the stalling of the engine of the automobile which afforded some excuse for the failure of the plaintiff in the Kinghorn Case to look again.

When the plaintiff in the Kinghorn Case once got on the tracks he could hardly do anything but proceed. The decedent here had thirty-nine feet within which to look and to change his mind before actually proceeding to cross. Since it was shown that he could see an on-coming train for a long distance from the point where he came on the track and met his death, a case of contributory negligence was made out unless there was proof that he looked within a reasonable time before the collision. In Kilmer v. Norfolk & Western Ry. Co. (C. C. A.) 45 F.(2d) 532, the plaintiff was held guilty of contributory negligence because he did not look effectively though the visibility there was impaired by a fog and evidently less than in the case at bar. In Baltimore & O. R. R. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, a rigorous standard of care was laid down by the Supreme Court. As we have already said a special burden was on the decedent to look again, and with unusual care, when visibility was somewhat impaired by a fog or mist. He in fact only looked where visibility was poorest and the train was farthest away, and failed to look where he could have seen best and could have best avoided the collision by crossing in the least time. Stryker v. Penn, R. Co., 104 N. J. Law, 299, 140 A. 451.

The judgment is reversed.

MANTON, Circuit Judge (dissenting).

On the plaintiff's proof (the facts as stated in the prevailing opinion) the trial judge was warranted in submitting the question of contributory negligence of the deceased to the jury as a question of fact. The opinion concedes that there is enough proof as to the negligence of the defendant justifying its submission to the jury. Therefore, as the jury found when the deceased approached the crossing he was not advised or informed in any way of the coming of the train by those in charge of its operation nor by a signal at the crossing, for there was none there. It was a single track roadbed. The deceased had the obligation of looking both ways. The night was foggy; the immediate locality was enveloped in a heavy fog; it was misty; visibility could not be had for more than 100 feet at the crossing and about 50 feet from the bridge. The deceased was shown to have exercised care, for he stopped when about 20 feet from the west end of the bridge.

A mother with her three young children, whose maternal care required the exercise of vigilance, saw him stop, look and listen. He was seen to look in the direction from which the train came. Both windows of his automobile were open. His car remained in a stationary position long enough for this exercise of care. The witness then saw him proceed in his effort to cross the track. She had proceeded but 15 or 20 feet, when she heard a crash at the crossing. The train was proceeding at a speed of 50 or 60 miles an hour, and approached the crossing without ringing a bell or blowing a whistle. This was in violation of the custom and practice of the road and statutory duty as imposed by the state of New Jersey. After the crash, the locomotive proceeded a thousand feet before it was stopped.

What more could the decedent have done under the circumstances? After exercising the care demanded of him under Baltimore & O. R. R. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, he was justified in going forward as best he could, obligated to operate and manage his automobile in starting and steering, having due regard for the possibility of trains coming in the opposite direction, enveloped in fog and mist. No one contends that he speeded unduly in crossing. If we compare the measurement of decedent's travel by the pedestrian Mrs. Swift with that of the motorcar, he was proceeding slowly and with care. No one can say whether or not he took another look in the direction from which the train came, nor can one say how far he may reasonably have been expected to see under the conditions which prevailed. The burden of proof of establishing contributory negligence rested upon the defendant, and freedom from contributory negligence might be proved by the circumstances alone. Where the collision has resulted in death, the same degree of proof to sustain a plaintiff's verdict is not required as where the plaintiff survives. Noble v. N. Y. C. & H. R. R. Co., 20 App. Div. 40, 46 N. Y. S. 645, affirmed 161 N. Y. 620, 55 N. E. 1098; Kavanagh, Adm'x, v. N. Y., O. & W. R. R., 196 App. Div. 384, 187 N. Y. S. 859, affirmed 233 N. Y. 597, 135 N. E. 933.

The ruling of this court in Kinghorn v. Penn. R., 47 F.(2d) 588, and Lehigh V. R. R. v. Quereau, 289 F. 767, required the trial judge to submit the issue of contributory negligence to the jury, and we should not disturb the jury's finding.

Therefore I dissent.