502

BALTIMORE & O. R. CO. v. ZALESKI
(two cases).
Nos. 5416, 5417.

Circuit Court of Appeals, Third Circuit.
July 19, 1934.

Wm. G. Nixon and J. F. Shrader, both of Philadelphia, Pa., for appellant.

J. H. Ward Hinkson, of Chester, Pa., for appellee.

Before DAVIS, Circuit Judge, and JOHNSON and FORMAN, District Judges.

FORMAN, District Judge.

Appellant, Baltimore & Ohio Railroad Company, a Maryland corporation, was sued in two cases by Anelia Zaleski, the appellee, residing in the Eastern district of Pennsylvania. In one case she sued for the death of her husband and in the other for the death of her infant son.

On April 28, 1932, at about 11:15 a. m., Michael J. Zaleski, the deceased husband and father, was driving an automobile in a northerly direction on Meeting House road, Delaware county, Pa., and his and plaintiff's five year old child, Joseph Zaleski, was a passenger with him. A train of the appellant going in an easterly direction on the near track of the defendant's double-track railroad collided with the said automobile, and the Zaleskis, father and son, were killed. The day was clear.

Plaintiff produced an alleged disinterested witness, Alfred C. Crockett, who testified as follows: That on the morning in question he was driving his Ford truck northwardly along said Meeting House road when decedent passed him at a point about 600 feet south of the railroad crossing in his small sedan, going at a rate of speed of about 18 to 20 miles per hour; witness followed at a distance of some 15 or 20 feet to the point where the road slopes downward through a cut to cross the tracks; when about three car lengths from the south rail of the east-bound track decedent slowed down, stopped, and then moved forward, stopped, looking to the right and to the left; the driver then moved his car across the tracks; just as the car was full across the first two rails it was struck by the train of the defendant; the child was thrown 70 feet from the car and killed instantly; the automobile with its driver was carried one-half mile from the place where it was struck, upon the pilot of the engine, before the train was stopped; the driver was likewise killed. The witness also testified that the alternating signal flash lights at the crossing were not in operation at the time of the accident. The only warning of the approaching of the train that witness heard was when the whistle of the locomotive was sounded at a spot within 300 feet from the crossroad, at which instant the decedent's automobile had reached the first rail of the track traveling at the speed of about 2 miles per hour. Photographs, taken at the spot indicated by the witness, show that the decedent would have had a view of from 600 to 650 feet down the tracks from which the train approached.

Defendant's witnesses testified that the train was traveling at the rate of 68 miles per hour; that the regular crossing whistle was blown at intervals from a point 1,525 feet from the crossing until the crossing was reached; that the electric signal device had been repaired and tested at 10 a. m. of the day of the accident and again at 11:40 a. m., immediately after the accident, and was working properly. In addition, defendant produced an engineer who testified that from any place on the highway within 20 feet from the near rail of the near track upon which the train was moving there was a clear and unobstructed view of 3,600 feet.

The jury brought in a verdict, in the case of the death of the father, for $8,653, and in the case of the death of the child for $2,683. Motions and reasons for a new trial in each case were discharged by the court, and judgments were entered on the verdicts.

The defendant contends that the decedent was guilty of contributory negligence, as a matter of law, in going on its tracks in the

path of the approaching train which could have been seen from 600 to 3,600 feet, as was variously estimated; that the defendant could not be held to be negligent under the evidence; that the contributory negligence of the father should be imputed to the child and bar recovery for its death.

The court properly submitted to the jury the question of negligence and contributory negligence upon the part of the father. It cannot be said, as a matter of law, that the decedent was guilty of contributory negligence in failing to observe the train before leaving a place of safety. He did, according to the witness Crockett, everything that could be reasonably required of him. The jury chose to refuse to take the defendant's version of the case in deciding what were clearly questions of fact, and believed that the defendant failed to give the usual warning signals. In view of this and the speed at which the train was approaching, the decedent could have been without fault in going on the tracks.

Defendant relies, among other cases, on the case of the Baltimore & Ohio Railroad Company v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, wherein it claims (with relation to the stop, look, and listen doctrine) that the standard of conduct was "laid down once and for all for the courts by the Supreme Court." This case was the subject of analysis and discussion by Mr. Justice Cardozo in the recent case of Pokora v. Wabash Railway Company, 54 S. Ct. 580, 583, 78 L. Ed. 1149, 91 A. L. R. 1049 (opinion filed April 2, 1934), wherein he says: "Extraordinary situations may not wisely or fairly be subjected to tests or regulations that are fitting for the commonplace or normal. In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of a jury. Dolan v. President, etc., of D. & H. C. Co., 71 N. Y. 285, 288, 289; Davis v. N. Y. C. & H. R. R. Co., 47 N. Y. 400, 402. The opinion in Goodman's Case has been a source of confusion in the federal courts to the extent that it imposes a standard for application by the judge, and has had only wavering support in the courts of the states. We limit it accordingly."

Since the jury has found that the father was not guilty of contributory negligence, there is no necessity to decide whether or not the federal courts are bound to follow the doctrine of Darbrinsky v. Pennsylvania Company, 248 Pa. 503, 94 A. 269, L. R. A. 1915E,

781, that the contributory negligence of a parent in whose care a child was at the time of the accident bars the recovery of the other parent for the death of the child.

The judgment should be affirmed.