37 P.(2d) 536

**RUSSELL v. DAVIS.**

No. 3949.

Supreme Court of New Mexico.

Oct. 22, 1934.

Rehearing Denied Nov. 21, 1934.

Reid & Iden, of Albuquerque, for appellant.

J. S. Vaught, of Albuquerque, for appellee.

ZINN, Justice.

This is an appeal from a verdict and judg-ment in the district court of Otero county, awarding appellee, administrator of the estate of C. M. Russell, deceased, the sum of $10,000 against appellant, Roy T. Davis, on account of a fatal collision between appellant, the driver of an automobile, and appellee's intestate, a pedestrian.

Appellant was traveling in a Hudson coach from El Paso, Tex., in a northerly direction toward Las Cruces, N. M., on United States Highways No. 80 and No. 85. This highway, sixteen feet wide, of concrete, carries a considerable amount of automobile traffic.

At Berino, a small settlement located nineteen miles south of Las Cruces on this highway, B. W. Russell, son of the deceased, was operating a garage and filling station, located by the side and a short distance to the east of said highway. There is a "School Zone" sign to the south of the filling station, but no other warning signs. Standing at the filling station the highway is visible to the south a distance of at least one-half mile.

The Santa Fé Railroad parallels the highway at Berino on the west. The deceased, of the age of sixty-six years, was standing at the south corner of the filling station, talking to his son B. W. Russell, when a train on which another son, Robert L. Russell, employed as a train man, came into the Berino station and stopped at a point opposite the filling station. Robert L. Russell, seeing his father standing by the filling station, signaled him to come across the highway. The deceased started across the road toward the train when B. W. Russell, standing about ten steps to the east of the pavement, noticed a truck coming from the north. He called to deceased to wait until the truck had passed. The deceased stopped. After the truck passed B. W. Russell looked both ways and, seeing no car from either direction, told deceased to go ahead. The deceased was at that time standing about two steps east of the pavement. The deceased started straight across the highway when the appellant's car was about 200 feet down the highway, coming from the south. When deceased was about the center of the road, or a little past the center towards the west, he looked to the south. As the car of appellant came closer to deceased it swerved to the west, or left side of the road. The deceased started to run and ran toward the west edge of the pavement. The radiator of the car just missed deceased, who then turned his back to the car and was facing to the east when the right rear glass in the car hit him in the back of the head throwing him to the pavement, from which collision he died.

Appellant was driving his car at sixty miles per hour, or more. The statutory rule of the road in effect then was forty-five miles per hour. 1929 Comp. St. § 11-804 (b) (7). On sighting the deceased, appellant applied his brakes, and exact measurements taken from rubber marks on the pavement showed that the wheels had slid for a distance of 35 feet on the pavement before striking deceased, and slid an additional 177 feet after striking deceased, making a total of 212 feet. The appellant stated shortly after the accident that he was driving too fast and did not know what made him go on the wrong side of the road.

It is the theory of appellee that if the appellant had stayed on the right side of the road where there was nothing to obstruct him, the deceased would be living to-day. Also, had the appellant been driving his car at a rate of speed so that it could have been controlled by him, the accident would not have occurred. Appellee charged that the appellant drove his car in a reckless manner and in wanton disregard of the rights and safety of others and at a speed to endanger others contrary to 1929 Comp. St. § 11-803, and in violation of the statutory rules of the road, to wit: 1929 Comp. St. § 11-804 (a), (b) (7), and section 11-225 (a).

There is, of course, conflict between the appellee and the appellant's evidence as to just what occurred, as to the speed of the automobile, and other matters.

Appellant is here contending that under the facts the deceased was negligent per se; that the rule to be applied to a situation of this kind is that applied by the courts in railroad crossing accidents; that is, as a matter of law, a pedestrian is negligent per se who enters upon a main traveled highway without first stopping, looking, and listening. Appellant contends greater care and caution ought to be imposed upon a traveler on foot attempting to cross a highway under the conditions surrounding this accident than upon a motorist who goes on a railroad crossing. Appellant argues that the standard of conduct, prescribed by the Supreme Court of the United States in the case of B. & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645, where it said: "When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution he does so at his own risk," should apply with equal or greater force to a man attempting to cross on foot a main and heavily traveled highway, such as this was, because any automobile traveling by the filling station was just as dangerous an agency, if it should strike the pedestrian, as a locomotive, with this difference that probably a vehicle passes over the highway at this point once every minute or two, while trains probably do not

average one every thirty minutes over the usual railroad crossing.

Appellant cites in support of his theory the recent case of Standard Oil Co. of Kentucky et al. v. Noakes, 59 F.(2d) 897, 898, decided by the Circuit Court of Appeals, Sixth Circuit, on June 27, 1932, where the court said: "While the question of due care is very generally left to the jury, nevertheless when dealing with a standard of conduct, and when the standard is clear, it should be laid down once for all by the courts. Baltimore & Ohio Railroad v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645. Cf. New York Telephone Company v. Beckers, 30 F.(2d) 578 (C. C. A. 2). We need not consider whether the standard of conduct applied to one approaching a railroad crossing is to be applied to one approaching an automobile highway, nor whether the standard applicable to the driver of an automobile is to be applied to a pedestrian. There can be no doubt that one who crosses a street between intersections and from behind a parked car, which not only obstructs his view but also the view of drivers of approaching cars, is under a duty to look in the direction from which danger may be expected, and the failure to do so is negligence which will defeat recovery if accident results. This must be so if reason and common sense are to be applied in measuring human conduct, and if experience and observation are of aid to judgment. 'Walking from behind and going beyond a standing vehicle into the pathway open to traffic is a fruitful source of accident.' Jones v. Florios, 248 Mich. 153, 226 N. W. 852, 853. 'The time has come when ordinary care requires the pedestrian to look for approaching automobiles before he leaves the zone of safety.' Mertens v. Lake Shore Yellow Cab & Transfer Co., 195 Wis. 646, 218 N. W. 85, 86."

We need not quarrel with the reasoning of the Circuit Court of Appeals in the case of Standard Oil Co. v. Noakes, supra. Unquestionably it is the duty of a pedestrian to look in the direction from which danger may be expected before he enters upon a main and heavily traveled highway. Conceding that "the time has come when ordinary care requires the pedestrian to look for approaching automobiles before he leaves the zone of safety" or before he enters upon a main traveled automobile road, and conceding that it was the duty of the plaintiff in the instant case before going upon the highway to stop, look, and listen for approaching cars, there is also a corresponding duty upon the motorist to keep his car under control to avoid collisions if possible, where pedestrians might be expected.

The standard of conduct applicable to one approaching an automobile highway is the same standard applied to one approaching a railroad crossing or a bicycle path. Each is bound to the exercise of such ordinary care as the circumstances of the case require. There is but one standard of conduct to be applied to a person crossing at either place— the care and caution of a prudent person under the circumstances. The precautions to be taken in each case increased with the hazards. Each is bound to the exercise of ordinary care for his own safety and the prevention of injury to others.

■ The interpretation of the relative term "ordinary care" depends upon the facts and circumstances of each particular case. Drivers of automobiles and pedestrians both have the right to the use of the highway. The former must anticipate the presence of the latter and exercise reasonable care to avoid injuring them, care commensurate with the danger reasonably to be anticipated. Morel v. Lee, 182 Ark. 985, 33 S.W.(2d) 1110.

■ Where pedestrians are likely to cross a highway, as in a settlement, the driver of a motor vehicle is required to be more vigilant in keeping a lookout for foot travelers than at points where they may not be anticipated, for example on the open highway. On the open highway the vigilance of the driver is somewhat relaxed and the vigilance and watchfulness required of the pedestrian is correspondingly increased. This is due care under the circumstances.

The rule in the Goodman Case, supra, as applied to a man who goes upon a railroad track is sound. "He knows that he must stop for the train not the train stop for him." The train is tied in its course of travel to the tracks from which it does not deviate. It does not go careening all over the right of way. That is not true of the automobile. Its path is not fixed to two strands of steel. If the brakes of the car are in good order, it can stop within a reasonable distance. It can turn to the right or left at the command of the steering wheel. Railroad tracks are the exclusive course of the railroad train. In New Mexico the main highways are not exclusively reserved for motorists. The pedestrian can be seen trudging along or across the highway to his destination without deeming himself a trespasser. The narrow-wheeled wagons of the mountaineer drawn by pinto ponies vie with the lowly burros loaded with their burden of firewood for a place on the macadam or concrete. For all of these the motorist must and often does turn aside or stop to avoid collision.

The duty on the part of the deceased was to enter the highway with care, using his faculties to avoid a collision. Failure on the part of the deceased to have exercised due care might have amounted to contributory negligence on his part and bar recovery. His lips are sealed in the silence of the grave. He cannot present his version. He speaks through his son. We must accept the truth of the son's testimony as did the jury, and from the facts occurring at the time of the accident we must draw such inferences as come to the minds of reasonable men under the circumstances.

As we reconstruct the scene, we infer that the deceased entered upon the highway to a point west of the center. Sighting the approach of the defendant's car, the instinct of self-preservation caused him to run to the west. There the appellant's car was not expected to be. The right side was for south bound traffic. Dismayed at the unexpected route of appellant's car, the deceased after reaching the west side of the pavement attempted to turn back, when he was struck. He exercised ordinary care in approaching the highway, and acted as any pedestrian might have under the circumstances.

We quote with approval from an opinion of the Pennsylvania Supreme Court, where they said: "When a pedestrian attempts to cross a street between established crossings, as vehicles are rapidly approaching, and injury results, he will be chargeable with such carelessness as will prevent a recovery of damages; but where, having observed the traffic and using due care, he deems it safe to attempt to cross, he is under no fixed duty to look back, though the circumstances may be such that in the exercise of due care it might become his duty to do so and be negligence to disregard it. Anderson v. Wood, 264 Pa. 98, 100, 107 A. 858. But when he reaches safe place, and, without any act on his part contributing to the cause, a driver suddenly changes the direction of his car, striking the pedestrian, the latter cannot be held guilty of contributory negligence as a matter of law. Arnold v. McKelvey, 253 Pa. 324, 98 A. 559." Kennelly v. Waropoyak, 266 Pa. 94, 109 A. 608, 609.

Russell would not have been killed but for the negligence of the appellant in driving at a sixty-mile per hour speed past a school zone sign, through a settlement, so that his car slid 212 feet when the brakes were applied before it stopped.

■ The appellant, as a driver of an automobile, is bound to anticipate that he may meet pedestrians on the highway. He must so operate his car as to prevent injuring them if in the exercise of due care on his part it is possible to do so. Reaugh v. Cudahy Packing Co., 189 Cal. 335, 208 P. 125.

■■ Where reasonable men may fairly differ upon the question as to whether there was contributory negligence or not, the determination of the fact is for the jury. Padilla v. Railroad Co., 16 N. M. 576, 120 P. 724. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the courts. Id. In the case at bar the jury found for the plaintiff. We cannot, from the facts, say as a matter of law that the deceased was guilty of contributory negligence. In view of this the appellant's motion for an instructed verdict was properly denied by the trial court. The verdict and judgment will not be disturbed.

It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.