Fay Purdy, as Administratrix of the Estate of Frank Elmer Purdy, Deceased, Appellee, v. L. C. Sprague and John Junell, Appellants.

Gen. No. 8,986.

Opinion filed June 3, 1936.

SHELTON F. McGRATH and ARTHUR B. COPELAND, both of Peoria, for appellants.

BURNETT M. CHIPERFIELD, CLAUDE E. CHIPERFIELD and ROBERT B. CHIPERFIELD, all of Canton, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

This is a suit brought by Fay Purdy, the appellee, as administratrix of the estate of Frank Elmer Purdy, deceased, her former husband, against the appellants to recover damages for the death of her husband. The declaration consisted of four counts. The first count charged general negligence in the operation of appellants' train; the second count charged failure to give the statutory signals for the crossing; the third count charged that the train was traveling at an excessive rate of speed; and the fourth count charged negligence on account of the existence of an embankment of earth to the east of the crossing where the accident happened, upon which were growing weeds and vegetation. Upon the trial and at the close of the appellee's evidence the appellants tendered motions for a directed verdict, together with instructions to find the appellants not guilty, which motions were denied, and again at the close of all the evidence similar motions and instructions were tendered but were also denied. The jury returned a verdict in favor of appellee for $3,800. Appellants' motions for judgment *non obstante veredicto* and for new trial were overruled and judgment was entered against appellants on the verdict.

The decedent was a farmer, 58 years old, and at 1:40 o'clock in the afternoon of October 30, 1933, was driving his Chevrolet car in a northwesterly direction over a country highway and upon a railway crossing known as "Courson Crossing," located about two miles west of Abingdon in Knox county. At the same time a

freight train was approaching from the east on appellants' railway and a collision occurred which caused the death of Purdy. He had been at the home of Otto Murk, a neighbor, who resided about a quarter of a mile southeast of the Courson Crossing. After leaving the Murk home Purdy had to travel north in the public highway for a distance of about 80 rods where that highway joined another highway running east and west parallel with the railroad of appellants. At this point the railroad was hidden by an embankment 12 feet high and covered with dense vegetation or weeds from two to six feet in height. Purdy would then have to go west about 100 feet to the place where the road intersects with the other road that goes over Courson Crossing. He would then turn north and travel a distance of about 40 feet to the south rail of appellants' track. The roadway was about 10 feet in width and crossed the railroad track at an angle of approximately 70 degrees. There was an embankment on the south side of appellants' railroad that was at least 12 feet high about 400 feet east from the crossing. It had a very gradual slope toward the crossing and had been cut back by excavation and removal of dirt for a distance of 30 feet east of the crossing. The train involved in the accident consisted of 52 cars of which 35 were loaded and the balance were empties, and was drawn by two locomotives. The train was traveling west and the track descends slightly through the cut as it approaches the crossing. It was a clear, bright, sunshiny day. The road sloped up toward the Courson Crossing. Four witnesses for appellee who observed the speed of the train at some distance from the crossing testified it was traveling at the rate of from 40 to 45 miles per hour. The appellants' witnesses who were riding in the two engines placed the speed at 25 to 30 miles per hour. Four witnesses for appellee testified the bell did not ring nor the whistle blow as the train

approached the crossing. They were all located a considerable distance away from the track and the crossing. All members of the train crew testified that the lead engine was equipped with an automatic bell ringer and that the bell rang constantly from the time the train started; also that the engineer blew the whistle at the whistling post east of the crossing. One witness for the appellee, Gerda Murk, testified that she saw decedent make the turn and start toward and across the railroad track; that he was driving slowly but did not stop at any time; that he drove right up on the track, and at the time he got on the track the train hit him; that when he went up on the crossing his car went slower than it had been going when it made the turn; that he kept right on going right on to that track in front of the engine without stopping; that he was going slow, at the rate of six or eight miles per hour. H. C. Wells, a brakeman, testified that he was riding on the left-hand side of the lead engine, and when about 150 to 200 feet east of the crossing he observed the decedent 30 or 40 feet from the crossing; that as he approached the crossing decedent looked directly ahead and drove directly on the track in front of the engine without looking in any other direction. J. M. Shiplett, a witness for appellee, testified that when one was within 16 feet of the crossing it would be possible to see up the track from 180 to 300 feet. Orville Courson, also a witness for the appellee, testified that when within 15 feet of the south rail, one could see up the track to the curve which was almost 80 rods east of the crossing. On the date of the accident Purdy was in good health, with eyesight and hearing unimpaired. He had lived for more than 15 years in the vicinity of this crossing, had crossed it frequently and was entirely familiar with the surroundings. The photographs offered in evidence on the part of the appellants show conclusively that when

the decedent was within 20 feet of the crossing he could have seen down the track for nearly a quarter of a mile.

Appellants argue two main questions for reversal of the judgment: First, it is contended that the appellee wholly failed to prove any negligence on the part of appellants as charged in the declaration or any count thereof. The testimony of the witnesses that they heard no whistle or bell and that none was sounded was evidence for the jury to consider in making up its verdict as to the negligence of appellants but because of the remote situation of the witnesses from the scene of the accident it is doubtful in this case as to whether it amounted to more than negative testimony. *Provenzano v. Illinois Cent. R. Co.,* 357 Ill. 192; *Morgan v. New York Cent. R. Co.,* 327 Ill. 339. Appellee's witnesses testified to the speed of appellants' train but even though it be admitted that the train was traveling at 45 miles per hour we know of no statute or rule of law of which this speed would be a violation. The same might be said of the charge in the fourth count as to the dangerous embankment. There was no statute or rule of law which constituted the existing condition a violation.

The second question raised by appellants is that of contributory negligence on the part of appellee's intestate as would bar recovery. In recent years our Supreme Court has been called upon frequently to pass upon the degree of care necessary to be exercised by a person about to cross a railroad crossing. In *Greenwald v. Baltimore & O. R. Co.,* 332 Ill. 627, it was said:

"The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the

amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence.''

In *Sheehan v. Chicago, N. S. & M. R. Co.*, 269 Ill. App. 477, the court held:

''A railroad crossing is a place of known danger and ordinary care requires one approaching it to make diligent use of his senses of sight and hearing, retain proper control of his vehicle and exercise care and caution commensurate with the danger to be anticipated.''

Purdy had been driving six to eight miles per hour from about 40 feet from the crossing. It was daylight and he was familiar with the crossing. He could have stopped his automobile almost immediately. When a person goes upon a railroad track he knows that he will be killed if struck by a train. He knows it is his duty to stop for the train and not for the train to stop for him. Similar language was used in the case of *Baltimore & O. R. Co. v. Goodman*, 275 U. S. 66, 72 L. Ed. 167. In that case the court held that one attempting to drive an automobile over a railroad crossing with which he is familiar is negligent so as to prevent recovery for his death by being struck by a train where when his view of the track is obstructed, he does not stop and look, and if necessary, leave the vehicle, to make sure that the crossing is safe. In the later case of *Pokora v. Wabash Ry. Co.*, 292 U. S. 98, 78 L. Ed. 1149, relied upon by appellee, we do not understand the ruling of the court to be in direct conflict with the *Goodman* case except to limit the unnecessary remark which they said had been a fertile source of controversy, viz.: ''In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of

his vehicle, although obviously he will not often be required to do more than to stop and look.'' In that case the facts were entirely different from the instant case. The court there said the record did not show in any conclusive way that the train was visible to Pokora while there was time to stop. In this case Purdy had ample time to stop within at least 20 feet of the crossing if he had looked. While ordinarily the question of due care on the part of the injured party is one for the jury, when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care, but where the evidence with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff the trial court is justified in instructing the jury to return a verdict for the defendant. *Greenwald v. Baltimore & O. R. Co., supra.*

It seems clear to us in this case that if the decedent had exercised due care in looking in the direction from which the train was coming the collision would have been avoided. It is our judgment that the manifest weight of the evidence shows that appellee's intestate was guilty of contributory negligence sufficient to bar recovery and that the judgment of the circuit court be reversed and the cause remanded for a new trial.

*Reversed and remanded.*