## SILVEY v. LEHIGH & N. E. R. CO.
### (two cases).
### Nos. 102, 103.

Circuit Court of Appeals, Second Circuit.

Dec. 12, 1932.

Wellman, Smyth & Scofield, of New York City (Herbert C. Smyth and Roderic Wellman, both of New York City, of counsel), for appellant.

John J. Welsh, of Brooklyn, N. Y. (Matthew J. Lyons, of Brooklyn, N. Y., of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

On a clear day, at about 6 p. m., July 20, 1929, the appellee's intestate and the appellee Louis Silvey were riding in a motorcar driven by the deceased on a public highway, Route 17, between Goshen and Middletown, N. Y. While crossing appellant's railroad tracks, the motorcar came into collision with the appellant's train. Benjamin Silvey was killed, and his son, Louis Silvey, was injured.

The railroad track runs east and west and the public highway runs in substantially the same direction, but distant about 200 feet to the north and to the appellees' right, as they proceeded, there was a sharp curve in the railroad tracks and at that point the highway crosses the appellant's track. At the crossing, the rails and highway meet at substantially right angles. The train was running from Swartwood Junction, N. J., to Goshen, N. Y., and encountered about three crossings within a mile and a half of the scene of this accident. At the crossing where the collision occurred, there was no electric bell or gates but there was an automatic wigwag signal. There were the usual warning signs a short distance from the crossing. The wigwag signal was a metal disc suspended, pendulum-like from a crossbar at the side of the highway, and when a train ran within 2,500 feet of the crossing, the action of the wheels of the train closed a circuit which, when in working order, operated the wigwag to and fro across the public highway and in this manner gave notice of the approach of the train. At the time of this accident and for some time prior thereto, the wigwag signal was not in good repair and failed to operate. To the right, as the appellees approached, they were confronted with the sharp curve in the appellant's track about 200 feet distant. Witnesses who were at a point 25 feet from the track say the view to the right was limited to 250 feet. The track itself is not visible this distance. As one approaches from a point 25 feet away from the track, visibility along the track to the right diminishes and the testimony is that it does not extend more than 200 feet. There was sufficient evidence to warrant the court sending to the jury the question of whether or not the wigwag signal operated on this occasion.

As the motorcar approached the track, the deceased drove upgrade. He stopped 15 feet from the railroad track, looked to the left and to the right. At that time the visibility up the track to the right was as stated about 200 feet because of the curve. His son says that they saw no train, heard no whistle blown or bell rung, and that the wigwag signal was

not operating. After this stop, the automobile was started, moving at the rate of five or six miles an hour, and when. upon the track was struck. His son saw the train for the first time when the front wheels of the motorcar were on the track. The son looked both ways, as did the father, and estimated that driving over the 15 feet after stopping, took but a few seconds. The estimate of time consumed by the train before it reached the crossing is given as but a few seconds. These are estimates only and necessarily cannot be accurate. There is other testimony given by witnesses at the scene of the accident, supporting the claim that the deceased and his son exercised the care indicated as they approached the railroad crossing. The train approached the crossing at about 45 miles per hour,

Under this proof, justifying the statements, the question of the contributory negligence of the deceased and his son was for the jury. The rule of care to be exercised by both was stated by this court recently in Canadian Pacific Ry. v. Slayton, 29 F.(2d) 687 (C. C. A. 2), and Kinghorn v. Penn. R. R. Co., 47 F.(2d) 588 (C. C. A. 2). We need not restate the rule. We think that if the wigwag signal was not operating as the appellees' proof established, the jury might well find that both the father and son acted as reasonably prudent persons in approaching the track and crossing it. The failure of the wigwag signal to operate was an invitation to come forward. Wabash R. Co. v. Walczak, 49 F.(2d) 763 (C. C. A. 6); Pennsylvania R. R. Co. v. Shindledecker, 44 F.(2d) 162 (C. C. A. 6); Baltimore & O. R. Co. v. Shaw, 35 F.(2d) 410 (C. C. A. 3). The conflict of evidence presented a jury question as to contributory negligence. Chicago & E. I. Ry. Co. v. Divine, 39 F.(2d) 537 (C. C. A. 7); Norfolk & Western R. R. v. Holbrook, 27 F.(2d) 326 (C. C. A. 6); Chesapeake & O. R. R. v. Waid, 25 F.(2d) 366 (C. C. A. 4); Delaware L. & W. R. R. v. Rebmann, 285 F. 317 (C. C. A. 2); Payne v. Shotwell, 273 F. 806 (C. C. A. 3).

Nor may the appellees be refused their recovery upon the theory that when they did look 15 feet from the crossing, they should have seen the train. The speed of the train, the curve at the crossing, the defective wigwag signal, the obligation to look both ways, and the care and attention needed for operating the motorcar in approaching the track, were all factors for the jury to consider and made the question essentially one for the jury's determination.

Judgments affirmed.