## NOEL v. NEW IBERIA & N. R. CO.
### No. 1075.

Court of Appeal of Louisiana. First Circuit.
Jan. 24, 1933.

Milling Godchaux, Saal & Milling and L. K. Benson, all of New Orleans, for appellant.

Alfred Guilbeau, of Opelousas, for appellee.

MOUTON, J.

While plaintiff was driving his Ford coupé automobile at a crossing over a track of defendant company, his auto collided with a rear box car of a train which was being backed on a switch track.

The auto was demolished as a result of the collision, for which plaintiff obtained judgment below for $175, with legal interest from judicial demand.

Defendant company appeals.

The district judge said that defendant company had attempted to prove by its witnesses that the whistle had been blown, the bell sounded, and that a flagman who stood at the crossing had screamed at the top of his voice in a vain effort to prevent plaintiff and his two companions in the auto from crossing the track.

The court held that the witnesses of defendant company were unworthy of belief, and found that the company was negligent in not sounding the usual alarms, in not having some one stationed at the crossing, and in allowing the "Stop, Look and Listen" signboard to fall to the ground.

In its answer, defendant company made the following allegations:

"That the plaintiff was not exercising due care and caution in the operation of his car, but was negligent in its operation in that he failed to stop, he failed to look, and he failed to listen when had he done any of these things he would have observed the box car and the collision would not have happened."

The trial court did not pass on that defense, which it is not disputed embodies a plea of contributory negligence.

Counsel for defendant company, in their brief, say:

"Assuming the position of the Trial Judge to be correct, which, with deference to him we emphatically deny, still plaintiff is not entitled to recover."

It is really on that plea that the case is presented to this court for decision, and upon which we shall dispose of the questions involved herein.

The record shows that the right of way of defendant company is 50 feet on each side from the middle of the track, and that a fence runs at about the same distance from the track; next to the fence is a turn row about 7 feet wide. Plaintiff was driving his auto on a public road to go over the crossing at that point. To his left was a cane field which came up to this turn row or at about 57 feet from the track. This fact is shown by the evidence of plaintiff, who, in answer to a question on this subject, admitted that there was 57 feet from the sugar cane to the track.

Plaintiff referred in his testimony to some tall grass near the railroad track which obstructed his view, but the preponderance of the evidence shows that such was not the case. The only obstruction mentioned by counsel for plaintiff is in reference to the sugar cane field on the side of the roadway on which plaintiff was traveling.

Plaintiff said he stopped his auto, that his view was obstructed by the cane field; at first stating that a person would have to get on the railroad track before he would "be able to see the train coming." He modifies this statement immediately thereafter by saying it would be "very difficult" to see the train, which he again repeats in his testimony.

Asked if the reason he had not seen the train was because he had stopped behind the sugar cane, plaintiff answered, as follows: "Must be so"; and, to the next question, which was, "Is it not a fact that it is so," plaintiff replied: "Yes, it might be that, I can't say." Such vacillating testimony is very unsatisfactory, and it is difficult to say whether plaintiff stopped at the end of the cane field or before he reached that point.

Neville Bergeron, who was in the auto with plaintiff, was asked where they had stopped in reference to the cane patch, to which he answered: "At the end of the cane" or even with it, as he further explains. This witness had said previously that to see the train he would have had to cut the cane. When it was called to his attention that if he had stopped where the cane patch came to an end there could have been no possibility of cutting any cane, he changed his answer in a vain attempt to meet the unexpected situation. In another part of his testimony, this witness had also said, to see the train one would have to get down and look.

There is no evidence in the record to support that testimony which was unquestionably an exaggerated statement.

The only logical conclusion is, that when plaintiff reached the end of the cane field he stopped his auto, as was testified to by his companion, Neville Bergeron.

We say that this is the only reasonable conclusion, as it is not to be supposed that plaintiff in driving towards the crossing with the idea of going across would have stopped his auto behind the cane patch, and before getting to the end of the cane, so that he might see if any train was backing up on the switch track, which reasoning applies particularly to plaintiff who was a resident of the vicinity and was familiar with the conditions existing there.

From the end of the cane patch plaintiff started his auto to go over the crossing, and, according to Clemille Bergeron, who was also in the auto with him, was traveling, as he went across, not over ten or twelve miles an hour. There is no evidence to show that he was going any faster than that.

In the case of the Baltimore & Ohio Railroad Company v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 25, 72 L. Ed. 167, 56 A. L. R. 645, which has been repeatedly cited in cases of this character, Mr. Justice Holmes, organ of the court, said:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look."

In the case of Townsend v. Missouri Pacific Railroad Company, 3 La. App. 598, where the accident occurred on a switch track, the case here, and not on the main track of a railroad company, the court accepted the view expressed in the Goodman Case, where it said, if the driver of the truck could not get a view of the track from his seat it was his duty "to get out and walk back. He was aware of the hazard and should have taken extra precautions." The court also said, in that opinion, as follows:

"For a driver of a motor vehicle to merely stop, look and listen before attempting [to cross] a railroad crossing does not meet the requirements of the law."

In the case of Young v. La. Western Ry. Co., 153 La. 129, 95 So. 511, the court said:

"The duty to stop, look, and listen before crossing a railroad must be performed at a time and place where stopping, looking, and listening will be effective." Citing several authorities.

The stop, look, and listen rule has been applied in such a number of cases by our courts

that we find it unnecessary to cite other decisions on that subject.

The proof in the instant case is that plaintiff stopped at the end of the cane patch, and from that point proceeded to go across the railroad track. He was traveling at about 10 or 12 miles an hour, and the train with which he collided was going at about the same rate of speed, if not slower.

■ There was, according to his testimony, a space of about 57 feet from the sugar cane field to the track, and it is shown by the testimony of Neville Bergeron, one of his companions in the auto, that he stopped his auto at the end of the cane patch. After making that stop, he started from that point to go across the railroad track, traveling at about 10 or 12 miles an hour towards the point where the train was backing up at about the same speed, if not at a slower rate. It was the duty of the plaintiff as he approached that crossing to look in both directions before attempting to cross. If he had discharged that obligation, it is impossible to believe that he would not have seen the train coming towards that crossing and in time to stop his auto before going on the track.

His testimony is that when he passed the cane he looked for the train and that he did not see anything, and by the time he got to the track he looked again and that the train was "upon" him.

It is again simply impossible to believe that plaintiff, who was driving at about 12 miles an hour through an unobstructed space of 57 feet, would not have seen that train after passing the cane field, if he had cast a mere glance in the direction the train was coming.

Len Bernard, who at the time of the collision was in a car with Taylor, another of plaintiff's witnesses, says that they came to a stop at the intersection of the road he was traveling on with the road on which plaintiff was driving; that the place where they stopped was about 35 or 40 feet from the crossing; and that he saw the train in question from that point. His testimony is, "I made plaintiff a sign to stop," and that he could not tell if he stopped or "kept on." When asked if Bernard had flagged him to stop, plaintiff answered, "He didn't flag me to stop, I understood he said bye bye."

This evidence of Bernard shows that at a distance of 35 or 40 feet from the track he saw the oncoming train and no doubt was impressed with the imminent danger with which plaintiff was threatened, and which prompted him to give plaintiff a warning of danger. If Bernard saw the train from that distance and also the danger in which plaintiff was placed, how is it possible to say that plaintiff could not have seen the train if he

had been looking ahead of him before venturing across that railroad track?

■ The inescapable conclusion is that plaintiff did not look in the direction the train was coming as he passed the cane patch, but looked only when the train was practically coming upon him, at a time when looking was not "effective" and too late to avoid the collision. He was clearly negligent and at fault for his failure to exercise the care which was required of him under the circumstances.

■ Counsel for plaintiff say in their supplemental brief that the "Stop, Look and Listen" doctrine applies only to the operation of passenger trains, traveling at a high rate of speed; but not when the company is engaged in switching box cars.

That rule is recognized in Act No. 12 of 1924, page 16. Counsel say that the rule so recognized in that statute has no application here, because section 4 of that act says that its provisions shall not apply to crossings of public roads by house tracks, "switch tracks," etc.; this collision having occurred on a switch track. This statute was enacted in 1924. Prior to its passage, in 1923, that rule was applied in Young v. La. Western Ry. Co., 153 La. 129, 95 So. 511, in which Broussard v. Louisiana Western R. Co., 140 La. 517, 73 So. 606, decided in 1917, is cited and wherein it was also applied. Obviously, that doctrine did not originate from the provisions of Act No. 12 of 1924; and was maintained where the collision occurred on a switch track. Townsend v. Missouri Pac. R. Co., 3 La. App. 598, above cited.

Counsel, however, in support of the opinion of the district judge, refers to sections 1 and 2 of that statute, which provide for bells, whistles, etc., on locomotives, and for signboards that must be erected at certain distances from railroad crossings. Such requirements would also not apply to crossings of public roads by house tracks and switch tracks under section 4 of that statute, if counsel be correct.

■ We find, for the foregoing reasons, that plaintiff was at fault and guilty of contributory negligence in the collision which occurred between his auto and the box bar of defendant company and against which plaintiff cannot recover, though defendant were also at fault. This rule is so well established that the citation of authorities to support it is not necessary.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed; and it is further ordered and decreed that the demand of plaintiff be rejected at his cost in both courts.