## HENWOOD v. WALLACE.
### No. 11649.

Circuit Court of Appeals, Fifth Circuit.
Feb. 4. 1947.
Rehearing Denied March 4, 1947.
Writ of Certiorari Denied May 5, 1947.
See 67 S.Ct. 1310.

---

SIBLEY, Circuit Judge, dissenting.

———◇———

Edward S. Klein, of Shreveport, La., for appellant.

Whitfield Jack, of Shreveport, La., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is an action ex delicto for damages sustained by appellee when his automobile, driven by him, collided with a freight train at a street crossing in the town of Plain Dealing, Louisiana.

Issues as to negligence and contributory negligence were submitted to the jury. The decisive question before us is whether the appellant was guilty of contributory negligence as a matter of law. The burden of proving that he was so contributorily negligent was on the defendant. The verdict of the jury necessarily implies a finding that the defendant failed to meet this burden. Also implicit in the verdict is a finding that, as the plaintiff approached the crossing, the train was not visible to him while there was still time to stop.

The plaintiff was a farmer, fifty-three years of age, and a man of good sight and hearing. His automobile and its brakes were in good condition. The windows of the car were open at the time of the accident. The crossing at which the collision occurred was in the business district of the town; and there were a warehouse and three storage tanks within twenty-eight feet of the tracks that obscured the vision of a person approaching the crossing while travelling toward it in a southeasterly direction.

The court below first thought that the plaintiff had a reasonable time in which to stop and avoid the collision, even though the train was running at a reckless rate of speed and failed to give any warning; but on further consideration, it held that the plaintiff's alleged contributory negligence was an issue for the jury. In its opinion, the court said:

"It appears that the front end of the plaintiff's car had to travel approximately six of the twenty-eight feet before he could see the approaching train, and the latter's engine protruded about two feet off the west rail, leaving only 20 feet intervening between the front of his car and the side of the train at the point of collision. Plaintiff testified that he was traveling between 10 and 12 miles an hour or some 15 to 16 feet a second. When he hit the point where he could see, the rapidity of his physical reactions depended to a considerable extent on the individual, who was a small farmer living a few miles from the point of the peril and excitement into which he was led if the jury found that the train gave no warning.

"The evidence is conflicting as to the speed of the train and the giving of signals, which, of course, was a matter for the jury to determine. The defendant owed a duty to those crossing a street such as the one involved here in a town of some 1400 people, not to approach it at a great speed and without warning, as some witnesses testified. The burden was on the defendant to prove the contributory negligence by a fair preponderance of the evidence. Can it be said, as a matter of law, that the circumstances above described show contributory

negligence, regardless of the fault of the defendant?"

The question before this court, on appeal, is not what we would have done if we had been members of the jury, or what a Louisiana trial court, sitting without a jury, would or should have done, or even what the Supreme Court of Louisiana would do in reviewing the case upon both the law and the facts. The question before us is whether, after an examination of the entire record, we are able to say that the substantial rights of the defendant were prejudicially affected by the submission to the jury of the issue as to contributory negligence.[1] This issue, in turn depends upon whether there was substantial evidence from which a fair jury might reasonably infer that the plaintiff, at the time of the injury, was exercising the care that an ordinarily prudent person would use for his own safety in similar circumstances.

It is conceded that the law of Louisiana governs, and that, under such law, contributory negligence is a complete bar to recovery; but it is contended that the Louisiana Highway Regulatory Act of 1938[2] repealed the stop-law act of 1924[3] and governs the issue as to appellee's alleged contributory negligence. We do not concur in this contention. We find no inconsistency in the two acts, and none has been pointed out to us. The state courts of Louisiana have not held that the former was repealed by the latter, but have dealt with them as if one supplemented the other. Different portions of one or the other of these acts are invoked by each of the parties to this suit; but we are unable to find in either statute anything determinative of the crucial question before us. The legislature was careful to provide in the act of 1924 that its violation should not affect the recovery of damages or the question of negligence, and that whether or not said violation was the sole and proximate cause of the injury should be for the jury to determine.

We must be careful to distinguish between the substantive and procedural enactments of these statutes. The provisions of the act of 1924 as to what questions shall be for the jury to determine deal with the essential functions of the judge and jury, and are not binding on a federal court. They interfere with the rights at common law by which a defendant may obtain a decision of the court where the facts are undisputed and there is an absence of conflicting inferences. State laws cannot restrict this function of a trial judge in the federal court.[4]

The substantive provisions of the statutes, above cited, require a motorist, on approaching a railroad crossing, to stop, look, and listen for trains before going upon the tracks. The failure to stop does not absolutely preclude recovery unless it appears that the failure to stop was a proximate cause of the accident.[5] The provision of the act of 1924, that the contributory negligence statutes of Louisiana shall apply in these cases as in other cases of negligence, is legislation affecting substantive rights, and governs federal as well as state-court decisions. The same is true as to the provision that violation of the act "shall not affect recovery for damages." The federal courts are bound by state-court decisions construing these parts of the law.

As to the rule prior to the act of 1924, see Holstead v. Vicksburg, S. & P. Ry. Co., 154 La. 1097, 98 So. 679, 680, wherein the Supreme Court of Louisiana said: "If one can see that the way is clear sufficiently, under reasonably normal circumstances, to pass without danger, he is justified in going ahead; or if, as in this case, the view is obstructed, he should approach cautiously until a view may be had." This indicates that the law of Louisiana prior to said act was not different from that which obtained generally throughout the country,

---

[1] 28 U.S.C.A. § 391.

[2] Dart's Louisiana General Statutes, Section 5222, Act No. 286 of 1938, § 3, rule 17.

[3] Dart's Louisiana General Statutes, Section 8138, Act No. 12 of 1924, § 3.

[4] Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; Mississippi Power & Light Co. v. Whitescarver, 5 Cir., 68 F.2d 928.

[5] Pittman v. Gifford-Hill & Co., Inc., La.App., 188 So. 470.

and which was applied in the federal courts prior to the Erie Railroad decision, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1478.[6]

We cannot agree that the rule in Louisiana upon the subject of contributory negligence was made more stringent by the acts above cited, because they have not been so construed by the appellate courts of Louisiana, and the act of 1924 expressly enacted a contrary rule.

Since the Pokora case has been cited with approval by the Court of Appeal of Louisiana in the Robertson case, *post*, it is reasonable to conclude that the law of Louisiana is in harmony with the Pokora doctrine. Even under the act of 1938 there is no absolute command to stop, look, and listen in the event it is impossible to do so. When the appellee found that his view was cut off, the statute authorized him to proceed with the greatest caution and at his peril. This is what the plaintiff testified he did. The words of the statute, "at their peril," have no reference to the risk of being held guilty of contributory negligence, because the history of the statute refutes such legislative intent. If this were not true, then a motorist who failed to stop would be guilty of contributory negligence as a matter of law, and the Louisiana courts would doubtless have said so instead of saying that if his view is obstructed he may proceed cautiously until a view may be had. We have been cited to no "contributory negligence statutes of Louisiana," referred to in said act of 1924 (section 8138 of Dart's General Statutes), but in any event we presume the legislature intended by the last sentence in this section that the contributory negligence law of Louisiana "shall apply in these cases as in other cases of negligence."

So far as we can find, neither the act of 1924 nor of 1938, supra, changed the duty of one approaching a railroad crossing to stop, look, and listen, except in respect to making it a misdemeanor to fail to observe this general rule. In Robertson v. Missouri Pac. R. Co., La.App., 165 So. 527, at page 530, the court said:

"Reference is made to the law regulating traffic on the highways, rule 17, § 3, tit. 2, Act No. 21 of 1932,[7] as strengthening the rule requiring a motorist to stop, look, and listen before attempting to cross a railroad track at a crossing and placing responsibility on him for the failure to do so. Our opinion is that this rule of traffic is only expressive of the law as it has heretofore existed. This law was passed in the light of the decisions of the courts of this state, as well as of other states, and it must be assumed that there was no intention to change the interpretation of the law on this point unless the Legislature clearly intended to change that interpretation, which we do not find to be the case."

On petition for rehearing in the same case, the court said, La.App., 167 So. 165, [166]:

"Act No. 21 of 1932 was passed in the light of Act No. 12 of 1924, and we see no reason to infer that the legislature intended to change the rule on that point."

There was evidence to warrant the jury in finding that at the time of the accident the speed of the train was as high as sixty miles per hour, and that no bell was rung or whistle blown. This evidence bears directly on the inherent probability of plaintiff's testimony that the train came upon him so fast that he did not see or hear it before it struck him. As he approached the crossing, the plaintiff slowed down to ten miles an hour, threw his car into neutral gear until he came from behind the tanks, and then, dropping into second, moved slowly toward the track, looking and listening as he went.[8]

The judgment appealed from is affirmed.

---

[6] Cf. Pokora v. Wabash Railroad Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049.

[7] Identical with the act of 1938 (see note 2, supra), so far as here applicable.

[8] See plaintiff's testimony on cross-examination, p. 30 of record:

"Q. And after you hit the bridge and the car began to 'drift' up to the railroad crossing? A. Well, I got on the bridge—as I said it is upgrade from there, and from there to the railroad by the time I got there it was going very slow. Q. How fast would you figure it was going when the car came from behind the oil tanks? A. Something like a man walking pretty peart—very slow I would

SIBLEY, Circuit Judge (dissenting).

The district judge's impression of his duty when an instructed verdict was moved was correct rather than that he acted on afterwards. There are two questions. First, was the general rule, well established in Louisiana, that one knowingly approaching a railroad crossing must stop (unless stopping is plainly unnecessary or imprudent), look and listen for the train,[1] made more stringent by the general highway Act, No. 286, Acts of 1938, p. 726. Second, does the evidence under either rule require a finding that plaintiff fell short in diligence.

1. The Act of 1938, Title 2, Section 3, Rule 17(a) is:

"It shall be the duty and obligation of every person * * * driving * * * a vehicle * * * when approaching at grade crossing of a public street, road or highway with any steam, electric, street, interurban or other railroad or tramway, operated upon fixed rails or permanent track, to, upon his own responsibility, bring such vehicle to a full and complete stop at such a place, in such a manner and for a sufficient period to enable the driver * * * to observe the approach of trains or cars thereon, by looking up and down said track in both directions and by listening therefor, and before proceeding thereon or thereover. In the event it is impossible so to do, then such

say. Q. Two or three miles an hour? A. I would not say just how fast, but I dropped very slow and I could not hear no whistle, or bell or nothing, and when I looked—you know a man will look, and I saw the train and put on my brake. Q. Did you see the train before you got on the railroad track? A. I could not positively say that—I saw it and put on my brakes and it hit me all at the same time—I just could not say. Q. As a matter of fact, isn't it true that your car came to a stop and you were on the tracks? A. Yes, sir, the best I can understand about that my car was on the rail. Q. And the front wheel was over the rail? A. I believe it was, yes, sir. Q. Did I not understand you to testify this morning that the first you saw of the train was when you were within four feet of where the accident occurred? A. something like that. Q. Mr. Wallace, do you not recall that the distance between the edge of the oil tanks and the rail, as stipulated by your attorneys and myself, was 28 feet? A. Yes, sir. Q. And you want to state now that the first you ever saw of the train was when you were within four feet of the track? A. Yes, sir, I said four or five feet, a fellow does not know—when you have an accident like that you can't tell how far it is. Q. Well, your testimony is that you were not more than four or five feet from the track; is that what you want the Court to believe? A. When I come out from behind the tanks I looked up that way and I seen the train and put on my brakes and the train hit me about the same time. Q. As a matter of fact, you did not stop and came on until you got on the railroad tracks, didn't you? A. No, sir, when I saw the train I put on my brakes. Q. You had not heard the train prior to that time? A. No, sir.

Q. Mr. Wallace, I am going to ask you if it is not a fact that on or about October 5th, 1944, in the presence of Mr. M. M. Wingate, a Notary Public in and for Bossier Parish, Louisiana, and at your home in the vicinity of Plain Dealing, you made a statement which I will show you and ask if it is not true and correct? A. (Witness examines the statement.) Yes, sir, I made that. Q. I will ask you if it is not a fact that in the statement you say you do not think you stopped—you were moving slow and 'when I was by the house and tanks and slowed up and looked and listened, and I remember putting my car in second gear just about the time I came out there and I never stopped or saw any train at all,' is that correct? A. Yes, sir, Mr. Ward was there, some of them typed it and I talked. Q. And you signed the statement? A. Yes, sir. Q. And you read it before you signed it? A. I think he read it, yes, sir. Q. I mean did you read it over before you signed it? A. No, sir, I just glanced at it. Q. Did Mr. Ward read it to you? A. No, sir. Q. You were present though when it was typed. A. Yes, sir."

[1] Illinois Central Railroad Co. v. Leichner, 5 Cir., 19 F.2d 118, and Louisiana cases cited; Louisiana & Arkansas Railroad Co. v. Jackson, 5 Cir., 95 F.2d 369; Lewis v. Thompson, D.C., 47 F.Supp. 435. Late Louisiana cases from the Louisiana Courts of Appeal are: Smith v. Louisiana & A. R. Co., 10 La.App., 502, 120 So. 669; Perry v. Louisiana & A. R. Co., La.App., 142 So. 736; Pearce v. Missouri Pac. Ry. Co., La.App., 143 So. 547; Noel v. New Iberia N. & R. Co., La.App., 145 So. 377; Lockhart v. Missouri Pac. R. Co., La.App., 153 So. 577; Slayter v. Texas & P. Ry. Co., La.App., 182 So. 343. See also Gibbons v. New Orleans Terminal Co., 1 La.App. 371.

persons shall proceed only with the greatest caution and at their peril."

This very strong statement of what the driver must do is said to be inapplicable because of the Act No. 12 of the Acts of 1924, p. 17, Sec. 3. This act also requires the driver of the vehicle approaching a railroad crossing to stop and look for the train, but adds that in the trial of all actions to recover personal injury or property damages where the driver "may have violated any of the provisions of this act, the question of whether or not the said violation was the sole or proximate cause of the accident and injury shall be for the jury to determine regardless of the penalizing feature of this act. . That the violation of this act shall not affect recovery for damages and the question of negligence or the violation of this act shall be left to the jury; and the contributory negligence statutes of Louisiana shall apply in these cases as in other cases of negligence." By their very terms these words apply only to "this act" of 1924 and not at all to the Act of 1938. Moreover, the later act deals with the whole subject of a vehicle approaching a railroad crossing. Its Section 16 is: "All laws or parts of laws in conflict or inconsistent herewith be, and the same are, hereby repealed, especially Act 21 of 1932." It seems to me very plain that the Act of 1938 is now the only law on the subject, and it does not give any privilege to drivers who violate it. The only argument presented against this conclusion is the decision in one of the Courts of Appeal of Louisiana in Pittman v. Gifford-Hill and Co., 188 So. 470, 472, in which the Court ruling on the pleadings, without discussing the effect of the latter act on the Act of 1924, said the question of whether the failure to stop was a proximate cause of the accident was for the jury and that "the failure to stop * * * does not necessarily and in all events preclude recovery, unless it appears that the failure to stop was a proximate cause of the accident." Of course, the failure to stop must be a proximate cause, or it would not be contributory negligence at all. Here proximateness cannot be denied, for if the driver had stopped four feet sooner, instead of over the first rail of the track, there would have been no injury. Only the failure to stop was under discussion. No court has said that if the driver does not stop he need not more carefully look.

2. Wallace admits he did not stop, or see or hear the train till just as it hit him. He was, from frequent use for many years familiar with the crossing and its obstruction to his left until within 28 feet of the track. It was ten o'clock in the morning of a bright summer day. The track to his left was straight for a half mile, and coming along it was a train over a half mile long containing 88 empty freight cars. There was no weather condition to hinder sight or hearing. An uncontradicted witness for plaintiff who was observing the train said its noise could be heard for a quarter of a mile. And as for seeing, it was less than a quarter of a mile away when the view of the track became clear. The grade of the highway was ascending to the crossing, and at a speed of 10 miles the automobile could have been stopped in four feet, as Wallace says he did stop after seeing the train. Here in narrative are his statements on cross-examination:

"I have been going over this place ever since I have been driving a car, since 1925, two or three times a week and knew what obstructions might be in the way and knew the Sinclair Bulk Station was some 28 feet from the first rail. My brakes and car were in good condition, and there is nothing wrong with my hearing or sight. After I got on the bridge it was upgrade to the railroad and when I got there I was going very slow; when the car came from behind the oil tanks something like a man walking pretty peart—I would not say just how fast, but I dropped down very slow and I could not hear no whistle, nor bell or nothing, and when I looked—you know a man will look—I saw the train and put on the brake. I could not positively say I saw the train before I got on the track—I saw it and put on my brakes and it hit me all at the same time. I testified this morning I was something like four feet from the track the first I saw the train—four or five feet."

He had at least 20 feet of clear space in which, familiar with the place, he might have stopped in safety, and looked at his leisure. He might by looking carefully and

at once have saved himself without first stopping. His testimony is, and the truth is too plain for dispute, that he did not stop or look till within four feet of the track when it was too late to do any good by doing either. He was negligent by the statutory law of Louisiana and by the standard of the conduct of a prudent man at a railroad crossing known to him to be dangerous. The judge, trying a law case in a constitutional jury trial in a federal court was bound to tell the jury on request that this man cannot recover. A judgment of affirmance disregards the law of Louisiana as laid down in the above cited cases.