### AUDIRSCH et al. v. TEXAS & PACIFIC RY. CO.

No. 13608.

United States Court of Appeals
Fifth Circuit.

April 5, 1952.

Rehearing Denied May 15, 1952.

Whitfield Jack, Shreveport, La., for appellants.

Charles D. Egan, Shreveport, La., for appellee.

Before SIBLEY, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

In this railroad crossing case, when the district judge denied the defendant's motion for a directed verdict at the close of the evidence, he was deemed to have submitted the case to the jury subject to a later determination of the legal questions raised by the motion. F.R.C.P. 50(b), 28 U.S.C.A. After the jury had returned a verdict for the plaintiff, the judge granted the defendant's motion for judgment not-

withstanding the verdict, stating in his opinion that he was impressed that a fair preponderance of the evidence supported the contention of the defendant that the crossing lights and bell signals were working and that the bell on the engine was rung, but that the granting of the motion was rested "solely upon the clear proof of contributory negligence as a proximate cause of the injury." 95 F.Supp. 730, 731.

As this court has pointed out, a motion for a directed verdict or for a judgment notwithstanding the verdict can be granted only when there is no evidence which, if believed, would authorize a verdict against the movant, while the district judge may grant a new trial when he thinks the verdict is wrong, though supported by some evidence. Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 500. In the consideration of this appeal, therefore we must proceed upon the assumption that it was within the province of the jury to find that the crossing lights and bell were not operating and that the bell on the engine was not being rung. There is no contention that the diesel horn or whistle was sounded.

The accident occurred at 1:00 a. m. on February 11th, 1950, in the city of Shreveport, Louisiana, where Malcolm street crosses the defendant's double track railway at grade and at right angles. The railway runs north and south and Malcolm street runs east and west.

George Audirsch, about 20 years of age, and who will be hereafter referred to as plaintiff, was driving his father's automobile east on Malcolm street at a speed of from 10 to 15 miles per hour, according to his testimony. Defendant's diesel switch engine, pulling 5 cars, was approaching Malcolm street from the south at a speed of from 18 to 20 miles per hour. The collision occurred on the east track. The front of the diesel engine struck the right center of the automobile. The car was demolished and plaintiff was injured.

Due to the presence of a store building and a high thick hedge along the south side of Malcolm street plaintiff could not see the approaching train until he reached a point approximately 60 feet from the railway track. The night was misty and foggy and visibility was poor but the headlight of the engine was burning and was visible to anyone who looked.

The crossing was protected by an automatic, electrically operated warning device, equipped with a bell, a red light, and a wig-wag. The plaintiff testified that he knew this crossing and had used it frequently; that he looked and listened and that the light was not lit or flashing, nor was the wig-wag working, nor the bell ringing. He had never known of the device to fail to function before.

The appellant makes a very persuasive argument that the failure of this warning device to function, along with the failure of the bell on the engine to ring, as to which also there was some evidence, would permit a reasonably prudent person to cross the track, and in support of that contention cites numerous pertinent authorities.[1] While some Louisiana decisions are among the authorities relied on by the appellant, the later Louisiana cases are definitely to the contrary. In Martin v. Yazoo & M. R. Co., 181 So. 571, 579, 580, the Louisiana Court of Appeals said:

"He knew the condition of the crossing and the danger of traveling it without first stopping, looking and listening. He relied entirely upon the absence of

1. Blashfield's Cyclopedia of Automobile Law & Procedure, Vol. 3, Sec. 1716, pp. 97–98; ibid, Sec. 1759, pp. 162–163; Teague v. St. Louis S. W. Ry. Co., 5 Cir., 36 F.2d 217, certiorari denied in 281 U.S. 733, 50 S.Ct. 248, 74 L.Ed. 1149; Baltimore & O. Ry. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167; Canadian Pac. Ry. Co. v. Slayton, 2 Cir., 29 F.2d 687; Pennsylvania R. Co. v. Shindledecker, 6 Cir., 44 F.2d 162, certiorari denied in 283 U.S. 827, 51 S.Ct. 351, 75

L.Ed. 1441; Wabash R. Co. v. Glass, 6 Cir., 32 F.2d 697, 698; Leuthold v. Pennsylvania R. R. Co., 6 Cir., 33 F.2d 758; Silvey v. Lehigh & N. E. R. Co., 2 Cir., 62 F.2d 71; Kinghorn v. Pennsylvania R. R. Co., 2 Cir., 47 F.2d 588; Lincks v. Illinois Cent. R. Co., 143 La. 445, 78 So. 730; Roby v. Kansas City Southern R. Co., 130 La. 880, 58 So. 696, 41 L.R.A.,N.S., 355; McLellan v. New Orleans & N. E. R. Co., 13 La.App. 581, 127 So. 648.

the flagman as an invitation to proceed. This alone was not sufficient to relieve him from the duty of at least reducing the speed of the truck so that he could stop immediately, or to look and listen at a place where to do so would be effective. Aymond v. Western Union Tel. Co., 151 La. 184, 91 So. 671; Gibbens v. New Orleans Terminal Co., 159 La. 347, 105 So. 367.

"This last cited case discusses and modifies the ruling on this point in the case of Roby v. Kansas City Southern Ry. Co., supra [130 La. 880, 58 So. 696, 41 L.R.A.,N.S., 355]".

The Supreme Court of Louisiana discusses the question at length in Gibbens v. New Orleans Terminal Co., 159 La. 347, 105 So. 367, 370, 371 and in part says:

"While the precise question presented in this case has not been heretofore passed on by this court, it has been the subject of consideration in many other jurisdictions, and the doctrine laid down almost universally is as stated by the Kentucky court—Kentucky & Indiana B. & R. R. Co. v. Singheiser, 115 S.W. 192. In that case the court said:

" 'The use by the company of the most approved safety appliances does not relieve one using the thoroughfare of the necessity of exercising ordinary care for his own safety in so using it, and it was the duty of appellee in approaching this crossing to exercise such care, and, while it may be said that when he observed that the gates were up that this was an invitation for him to cross, it was not an invitation to cross at all hazard, but only an invitation to cross with due care and regard for his own safety.' " See also, Wyatt v. Yazoo & Mississippi Valley R. R. Co., 13 La.App. 632, 127 So. 479; Slayter v. Tex. & Pac. Ry. Co., La.App., 182 So. 343; Dardenne v. Texas & Pac. Ry. Co., 13 La.App. 262, 127 So. 458.

The appellant further contends that under the law of Louisiana, as reviewed by this court in Henwood v. Wallace, 159 F.2d 263, the plaintiff was under no absolute legal duty to stop before moving on to the crossing; that he was entitled to rely upon more than ordinary care on the part of the defendant because it was a blind crossing, according to his contention, in that he could not see an approaching train until he reached the point about 60 feet from the railway track; and finally, that his failure to see the headlight of the approaching train until just before the collision should be excused because of the poor visibility due to fog and mist. He admitted, however, that it was not so foggy but that he could see down the track.

The substantive law of the state of Louisiana seems to have been correctly stated by this court in Henwood v. Wallace supra. Several later decisions of the Louisiana courts have emphasized the strict duty incumbent upon a traveler before crossing a railroad track. In Hutchinson v. Texas & N. O. R. Co., 33 So.2d 139, 143, the Louisiana Court of Appeals quoted with approval from an earlier decision of the Louisiana Supreme Court, Barnhill v. Texas & P. R. Co., 109 La. 43, 33 So. 63, as follows:

" 'The greater the difficulty of seeing and hearing the train as he approaches the crossing, the greater caution the law imposes upon the traveler.

" 'The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the danger the greater the care that must be exercised to avoid it, as where, because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary.' "

In Matthews v. New Orleans Terminal Co., 45 So.2d 547, 552, the Louisiana Court of Appeals said:

"The law makes it the duty of a motorist to stop before traversing a railroad track, but that rule is not to be so rigorously construed as to require a position of absolute immobility, and it will suffice for such person to have the motion of his vehicle so retarded and un-

der such control that he can stop instantly if need be, provided, however, he exercises due care in looking and listening for an approaching train. Another step is also necessary. He must see that which may be seen, and hear that which may be heard, and he is held to have seen that which he could have and should have seen." See also, Stelly v. Texas & N. O. R. Co., La. App., 49 So.2d 640.

At the speed at which the plaintiff was driving he could have stopped the car prior to reaching the track and after reaching a point where his view of the approaching train became unobstructed. He did not, however, observe the headlight of the engine until he drove upon the crossing. We think that under the Louisiana law and under the undisputed facts, including his own version, he was contributorily negligent. Since there was no evidence which, if believed, would authorize a verdict against the defendant, the district judge properly granted the motion for judgment notwithstanding the verdict.

Affirmed.